Robinson, J.
 

 This is an original action in
 
 quo warranto
 
 in this court, filed by the state of Ohio, on relation of the Attorney General.
 

 The defendant is a corporation organized under the laws of the state of Ohio.
 

 The petition alleges the state ownership of the Middletown feeder as a part of the Miami and Erie Canal; further alleges that the defendant owns and operates a manufacturing plant located in the vicinity of the feeder, and that the defendant now
 
 *439
 
 is, and for a long time has been, diverting water from the feeder to its manufacturing plant for manufacturing purposes, without authority of law and without the consent of the state; and prays that the defendant be required to answer on what authority it claims to have used and enjoyed the rights, privileges, and franchises set out in the petition.
 

 The first defense in general language pleads the reservation of his water rights by Abner Enoch from his grant to the state of the land upon which the Middletown feeder is constructed^ the succession of defendant to the water rights of Abner Enoch, and denies a diversion by it of any other water from the Middletown feeder.
 

 This defense cannot be construed into a general denial, since the state, by its action in
 
 quo warranto,
 
 requires the defendant to show by what right it takes any water from such feeder. The demurrer of the state to this answer raises the question of the validity of the reservation.
 

 The second defense in detail avers the ownership, by Abner Enoch of the lands upon which the Middletown feeder was afterwards located and the water rights which he had acquired at that point prior to any possession by the state as a proprietor, the conveyance by Abner Enoch to the state of the lands upon which he had theretofore erected a millrace, the reservation from that grant of his water rights, and the acceptance of that grant by the state, with the reservation. The second defense further avers that the waters available from the river at that point were far greater than necessary for the operation of the canal, and
 
 *440
 
 were and have been ever since sufficient for the purposes of the canal and for the purposes for which Abner Enoch theretofore acquired the water rights; that afterwards the- state entered into a contract with Abner Enoch to construct a new dam, feeder, and headgates upon or near the site where Abner Enoch had theretofore maintained a dam, in which contract it was provided that the dam, feeder, and headgates should be constructed of such capacity as would provide water both for the canal and for the use of Abner Enoch; that in pursuance of that contract the state did construct a dam, feeder, and headgates of sufficient capacity to furnish all the water needed for canal purposes and all the water required by Abner Enoch, and placed a weir or gauge in the feeder for the purpose of continuing unto Abner Enoch, his heirs and assigns, his water rights as before the construction of the Miami and Erie Canal, that the state under its contract obligated itself to furnish water to Abner Enoch, his, heirs and assigns, to maintain a feeder and headgates to their full capacity, so as to discharge the quantity of water for the use of Abner Enoch, his heirs and assigns, except such as was necessary for the Miami and Erie Canal for navigation purposes. The second defense again avers the succession in title of defendant from Abner Enoch, the continuous use by it and its predecessors for 100 years, and the use by this defendant since 1857, all with the knowledge and consent of the state; avers the partial destruction by the 1913 flood of a former feeder and dam, and reconstruction thereof with a diversion dam for the use of the defendant by
 
 *441
 
 the state of Ohio, in pursuance to its contract of 1826 with Abner Enoch, and continuous observance of and compliance with that contract by the state during all that period; and avers its ownership of the lands adjacent to the state dam, and that it is entitled to all the riparian fights as such owner, subject only to its grant to the state for navigation purposes.
 

 This defense is a mere detailed statement of the first defense, plus the defendant’s rights under the contract made subsequent to the grant, and plus an averment of ownership of the lands adjacent to the Miami river and the state dam, and the demurrer of the state to this defense raises the same question as the demurrer to the first defense and the additional question whether the state, by its contract, entered into subsequent to the grant, legally obligated itself to permit the defendant to divert the water.
 

 The third defense avers that the state of Ohio, under the act authorizing it to construct and operate the Miami and Erie Canal, was only authorized to and only did appropriate such waters from the Miami river through the Middletown feeder as were necessary for the purpose of navigation in and along the canal from what is known as the state dam to the city of Cincinnati, taking into consideration all waters that were delivered to such canal from various other sources north of such dam; that the state of Ohio has now abandoned the Miami and Erie Canal from the state dam northwardly, and no water is furnished for such canal north of the state dam, either for navigation or any other purpose, and that the
 
 *442
 
 state of Ohio is now diverting from the Miami river above the state dam larger quantities of water than it is entitled to have under the terms of the act permitting the appropriation of water for canal purposes and under its agreement with Abner Enoch; that the state of Ohio has abandoned for navigation purposes the Miami and Erie Canal from the state dam southwardly to the city of Cincinnati, and has permitted bridges, viaducts, and other constructions to be built across the canal that make it impossible to use the canal for navigation purposes; that since 1913 no portion of the canal has been used for navigation, and it is not the intention of the state of Ohio to again use the canal for that purpose; that the purpose of the construction of the canal has entirely ceased; that the state of Ohio, under the act providing for the construction of the canal, and under its contract with Abner Enoch, is not entitled to take any water from the river for the purpose of providing hydraulic power to manufacturers and others; that the act of the state of Ohio, permitting it to lease water for power purposes, authorized only such as were incident to the use of the canal for navigation, and that the state of Ohio is without power, under any act of the Legislature, to own, operate, or maintain a canal solely for the purpose of leasing water to others >for power purposes.
 

 The fourth defense is a plea of estoppel against the state by reason of its pleadings and the decree in the case of
 
 Enoch
 
 v.
 
 State of Ohio,
 
 in the Butler county common pleas and in the Ohio Supreme Court; and the fifth defense is estoppel of the state
 
 *443
 
 by its standing by and permitting and encouraging tbe expenditure of money by tbe defendant and its predecessors in title for 100 years, on the strength of a title which the state for all that period recognized.
 

 Since the defenses 1 and 2 are in the main the same, we will consider them and the demurrer to them as raising the question of the validity of the reservation, from limitation of or exception to the grant of Abner Enoch to the state, and the right of the defendant, as a successor to Abner Enoch, to divert water from the Middletown feeder.
 

 By stipulation, the state of Ohio and the defendant agree that the deed from Abner Enoch to the state of Ohio, under date of July 28, 1825, the report of Samuel Forrer under date of 1866, the certified copy of the record in the case of
 
 Abner Enoch
 
 v.
 
 State of Ohio,
 
 the copy of the Goudy-Johnson lease, February 21, 1925, together with a suitable plat of the premises, may be considered by the court upon the demurrer, the same as though each were fully set out in the amended answer.
 

 The deed from Abner Enoch to the state of Ohio recites:
 

 “In consideration of the benefits which will be conferred upon all who own real property in the vicinity of the said canal, and upon myself in particular, and also in consideration of the sum of one dollar to me in hand paid by the said commissioners in behalf of the said state, I hereby for myself and my heirs, give, grant, cede, and forever transfer to the state of Ohio, all the lands belonging to me which shall be necessarily occupied
 
 *444
 
 by the site of tbe said canal, and also by the site of the towing paths, feeders, aqueducts, reservoirs, spoil banks, and culverts connected therewith. (All water privileges reserved to myself as to mill seats, etc.)”
 

 The report of Samuel Forrer, “resident engineer,” under date of 1866, addressed, “To the Honorable Board of Public Works,” pertains to an application of one Thomas Miller for a lease of water power on the feeder of the canal near the state dam next above Middletown, and, after reciting certain physical objections to the lease to Miller of the water power from this, feeder, it proceeds:
 

 “In addition to these objections, the old right of Abner Enoch to the use of water from the Miami river, by way of the state feeder, cannot be set aside by the board of public works, by any authority it can now assume to possess. Whatever may be the extent of the Abner Enoch right, it is deemed clearly advisable that the board should, for the present, decline the application of Mr. Miller.”
 

 The report continues: “In regard to the application of the Middletown Hydraulic Company, for a recognition of certain alleged rights, etc.:
 

 “The undersigned understands this application to refer to their rights, generally, to pass all the water available for the purposes of the company, which can be taken from the Miami river, through the feeder and headgates used in furnishing water to the Miami Canal, and particularly all that Abner Enoch was entitled to pass to his mills, near Middletown. This matter seems to be one involv
 
 *445
 
 ing the prospect of a legal controversy between the Hydraulic Company and R. H. Hendrickson, Esq., and hence the application invoking some kind of action by the board of public works, and also the protest before alluded to. Without stopping to inquire what are at present the rights of the company, I will state what I know in regard to Abner Enoch’s claim for the right to use the state feeder as a channel for the passage of water to his mills. And, first, I may state that I made the preliminary survey and final location of the then called ‘Miami Canal,’ and superintended its construction from beginning to the end, excepting a short time in the year 1827. I also had charge of the canal, as resident engineer and acting commissioner, for many years after it was completed, during which time I had frequent interviews with Mr. Enoch, on canal matters involving very often conflicts of state and individual interests. There was, however, never any controversy between us as to the right of Mr. Enoch to the use of the state feeder to pass all the water he had a right to take from the Miami river. I know personally that my predecessor in the board of canal commissioners recognized the right of Enoch to the use of the state feeder. I never heard that any one occupying a place in the board of canal commissioners or board of public works ever expressed any doubts of such right. Of my own knowledge, I can state:
 

 “First, that when, in 1824, I located the dam, I found Mr. Enoch in possession of a dam near the site selected for the state dam, and a millrace which had the appearance, from its sinuosities and
 
 *446
 
 inequalities of width at different places, to have been in part once a bayou. I also located the feeder, and made it occupy Mr. Enoch’s millrace to a point within a few rods of the discharge of the feeder into the canal, excepting at places where the millrace was too crooked to justify its occupancy with the new work.
 

 “Second. From personal knowledge, I know that the contract for building the state dam and feeder, dated June 2, 1826, was given to Abner Enoch, at prices fixed by the chief engineer, instead of subjecting him to competition with many bidders, anxious for state contracts. I know, too, that Mr. Enoch was thus favored because he owned mills which were supplied with water from the Miami river at the same point and over the same ground selected by the state for canal use, and in the belief that he could carry on his work in such manner and time as to do less injury to his manufacturing operations than others might do. A clause was also inserted in the contract, bearing on this question, as follows, to wit: ‘It is also further understood and agreed that the party of the first part hereby relinquishes all claims for damages or compensation on account of the necessary stoppage of his mills, etc., by the construction of the aforesaid dam and feeder and work connected therewith.’
 

 “Third. The feeder and headgates were constructed of greater capacity to pass water than was necessary for merely canal use, and a weir or gauge placed in the feeder for the purpose of continuing to Mr. Enoch the use of the water as before the construction of the canal, so that, whatever may
 
 *447
 
 be the rights of Mr. Hendrickson or others as against the Middletown Hydraulic Company, there cannot, as it appears to me, be any doubt as to the obligation on the part of the state to Mr. Enoch and his successors to maintain the feeder and headgates in their full capacity to- discharge the quantity of water due for the use of the Enoch mills until restrained by competent authority.
 

 “It may not be out of place here to give an extract from the answer of the state to a bill in chancery, filed in the Butler county court of common pleas, April 17,
 
 1839—Abner Enoch
 
 v.
 
 State of Ohio.
 
 The complaint of Enoch was, among other things, that he was damaged in being deprived .of the use of water to his mills at different times, for which he claimed compensation.
 

 “The answer of the attorney on behalf of the state, who was an old resident of Butler county, was as follows: ‘Respondent, in further answering, says that instead of the complainant being allowed damages for drawing off the water from his mills in consequence of his own failure to erect a dam according to contract, this respondent is in equity and good conscience entitled to a decree for $10,000 for erecting and keeping in repair a permanent dam for his mills, whereby his said mills are more than doubled in value.’ This only shows what was the general understanding as to Enoch’s rights.
 

 “I may add, too, from personal knowledge, that Mr. Enoch frequently complained that he was not furnished with all the water necessary to operate his mills when the water was extremely low. I know, too, that the agents of the state in
 
 *448
 
 charge of the canal made all reasonable efforts by tightening the dam and economizing the use of the water in the canal to supply the mills.”
 

 Whatever may have been the capacity in which the state functioned in the construction of the Miami and Erie Canal for the purpose of a navigable highway across the state for the use of the general public, its function now, since the abandonment of the canal as a navigable highway, is that of a commercial proprietor, engaged in the operation of a great power plant for the sale of power and water to private individuals, and the right's of the state, as such proprietor, in this particular property, which have not heretofore been judicially determined, but are to be determined now for the first time, should be and will be measured by rules that are applicable to proprietors genefálly and applicable to like transactions between private individuals.
 

 “In conducting transactions with respect to its lands, the state acts in a proprietary, and not in a sovereign capacity, and, being amenable to all the rules of justice which it prescribes for the conduct of its citizens, it will not be permitted to revoke a grant of lands made upon a valuable consideration which it retains.”
 
 Cleveland Terminal & Valley Rd. Co.
 
 v.
 
 State ex rel.,
 
 85 Ohio St., 251, 97 N. E., 967, 39 L. R. A., (N. S.), 1219.
 

 “When the state appears in her courts as a suitor, to enforce her rights of property, she comes shorn of her attributes of sovereignty, as a body politic, capable of contracting, suing, and holding property, subject to those rule's of justice and right, which in her sovereign character she
 
 *449
 
 has prescribed for the government of her people.”
 
 State
 
 v.
 
 Executor of Buttles,
 
 3 Ohio St., 309.
 

 It is the contention of the state that, since the state by the Canal Act was only authorized to appropriate a fee to lands for canal purposes, and purposes incident thereto, it was without power to acquire in any other way for canal purposes an interest in land less than a fee simple, and therefore that, when it acquired any interest in land, the thing acquired must necessarily have been a fee simple.
 

 This court, in the cases of
 
 Ohio ex rel.
 
 v.
 
 P., C., C. & St. L. Ry. Co.,
 
 53 Ohio St., 189, 41 N. E., 205;
 
 State
 
 v.
 
 Snook,
 
 53 Ohio St., 521, 42 N. E., 544, and
 
 Malone
 
 v.
 
 City of Toledo,
 
 34 Ohio St., 541, has gone far towards sustaining that position of the state.
 

 In the first of these eases the court declared:
 

 “By force of the provision of Section 8 of the act to provide for ‘the internal improvement of the state of Ohio by navigable canals’ (23 O. L., 57), whenever the state actually occupied a parcel of land for canal purposes, a fee-simple title thereto at once and by virtue, alone, of such occupancy, vested in the state.”
 

 It will be observed, however, that the language there employed is that, “whenever the state actually
 
 occupied
 
 a parcel of land for canal purposes.”
 

 That case is not controlling in the instant case, for the reason that under the averments of the answer and the facts, as disclosed by the exhibits, which, by stipulation are made a part of the answer, the occupancy of the state was never exclusive, but was an occupancy, whether under
 
 *450
 
 the grant or otherwise, that at all times recognized the right of Abner Enoch and his successors to a joint use of the water which passed through that particular feeder, and therefore a joint use of the feeder and the land upon which the. feeder is located.
 

 We think it may be conceded, notwithstanding the reservation from the grant, that, if the occupancy of the state of this particular feeder and the land upon which it is located had been exclusive and in denial of the claimed rights of Abner Enoch, the occupancy by the state of this feeder would have amounted to an appropriation of Abner Enoch’s lands and water rights and relegated him, as to remedy, to a recovery of the value of his property and water rights, but the state of Ohio, during all this period, not only abstained from such occupancy as would appropriate the lands and water rights of Abner Enoch, but by its departmental construction affirmatively recognized his joint occupancy, so that the time, to this day, has not come when Abner Enoch, or his successors, could have the value of these property rights ascertained and compensation therefor awarded.
 

 The second of these cases
 
 (State
 
 v.
 
 Snook, supra),
 
 wherein the court held: “(1) Lands of which the state in any manner acquired possession under the Acts of February 4, 1825 (2 Chase, 1472), and February 7, 1826 (24 O. L., 58), and used in the construction of its canals, became the property of the state in fee”—asserts in perhaps broader language the same proposition that is asserted in the first of the cases; yet the effect
 
 *451
 
 is not different, for, notwithstanding the use of the words, “lands of which the state in any manner acquired possession” the title is made to depend upon possession, and “possession,” as used in that case, as did “occupied” and “occupancy,” as used in the preceding case, contemplates such possession or occupancy as would exclude all others. Such possession or occupancy under the Canal Act constituted an appropriation. For that reason that case is not decisive of the question involved in this case.
 

 The other case cited
 
 (Malone
 
 v.
 
 City of Toledo,
 
 34 Ohio St., 541) relates to lands acquired by appropriation, and the question there is as to the right of the owner of the land prior to its appropriation, or his successors, to repossess the land upon the abandonment by the state of the purpose for which it was appropriated, and would only be applicable to this case under the averments of the third defense and then only in case we should find that the state took by appropriation and acquired exclusive possession.
 

 The Canal Act (23 Ohio Laws, 50, 56) empowered the canal commissioners “to enter upon, and take possession of, and use all and singular any lands, waters, streams, and materials, necessary for the prosecution of the improvements intended by this act: * * * that in ease any lands, waters, streams or materials, taken and appropriated for any of the purposes aforesaid shall not be given or granted to this state,” upon application the value of the thing appropriated shall be ascertained, “and the canal commissioners shall pay the damages so as to be assessed and appraised,
 
 *452
 
 and the fee simple of the premises so appropriated shall be vested in this state.”
 

 The act authorizes the canal commissioners summarily to enter upon, take possession of, and use, any lands necessary for the prosecution of the improvement;, then provides that, if the owners thereof do not give or grant it to the state, the state shall pay for it, and, when it pays for it, shall have a title thereto in fee simple.
 

 There is no provision in the act expressly prohibiting the canal commissioners from taking less than a fee simple by gift or grant, and, if a prohibition is so implied, it must be in the language above quoted. Can it be said that it is there clearly implied?
 

 The prior decisions of this court, while expressed in broad language, were not based upon facts similar to the facts presented in this case, and the question of the title of the state to the lands there in controversy was not based upon a limited grant or a partial possession and it must be remembered that those decisions were not pronounced until long after the rights of the parties to this action had come into existence by their own particular circumstances, and this court has not yet passed upon the right of the canal commissioners by grant to take less than a fee simple. In that situation the departmental construction of its power in that respect, under the Canal Act, acquiesced in and acted upon by all parties interested for so long a period, is at this time a very potent factor in the interpretation of the extent of the power conferred by that act upon the canal commissioners.
 

 
 *453
 
 “It is a ‘settled rule that the practical interpretation of an ambiguous or uncertain statute by the executive department charged with its administrar tion is entitled to the highest respect, and, if acted upon for a number of years, will not be disturbed except for very cogent reasons.’ ”
 
 Swendig
 
 v.
 
 Washington Water Power Co.,
 
 265 U. S., 322, 44 S. Ct., 496, 68 L. Ed., 1036.
 

 This court, in the case of
 
 Miller
 
 v.
 
 Wisenberger,
 
 61 Ohio St., 561, 56 N. E., 454, declared:
 

 “Section 8 of the Canal Act of 1825 should be so construed as to fairly carry out the intention and understanding of the officers of the state on the one hand, and the landowner on the other, in each case, as near as the same can be ascertained from what was done, and the situation and surroundings of the premises in question.”
 

 Accepting that declaration as the policy of this court in determining the rights of parties growing out of the construction of the canals of the state, and it appearing from the averments of the answer and the exhibits herein that the canal commissioners, believing that Section 8 of the “Act to provide for the internal improvement of the state of Ohio, by navigable canals” empowered them to acquire lands by grant with limitations of title which would in no way interfere with the attainment of the purposes for which the act was passed, accepted in 1825 a grant of lands from Abner Enoch, then in possession and use of prior acquired water rights thereon, which grant contained a reservation to him of water for his mill seats, etc. and, believing that - the act empowered them so to do, constructed the Middletown feeder with a weir
 
 *454
 
 or gauge therein for the purpose of diverting from the feeder water, the right to the use of which Abner Enoch had theretofore acquired, and which right he attempted to reserve from the grant, and believing also that the reservation was effective to reserve such water rights to Abner Enoch, and his successors, recognized such reservation as valid to preserve to him such preacquired rights through a period of 100 years, and, in pursuance thereof, during all that period diverted such water from the feeder to Abner Enoch, and his successors, we, in view of the fact that the state of Ohio through various other of its departments has at all times recognized the validity and effectiveness of such reservation to preserve such water rights, and in view of the fact that it is questioned now by the state for the first time, in an attempt to carry out the intention and understanding of the officers of the state on the one hand and Abner Enoch and his successors, on the other, adopt the construction of the act that was placed upon it by the department of the government' authorized and empowered by the act itself to effectuate its purpose, and adopt the construction of the scope and extent of the reservation placed upon it by the parties thereto, viz., that the canal commissioners had the power to, and did, accept by grant such title as the state now has to the property upon which the Middletown feeder is located, that Abner Enoch in the grant undertook to reserve to himself, his heirs and assigns, all his prior acquired water rights, and that the state so construed that reservation. We therefore so construe it, and further entertain the view that the state’s rights
 
 *455
 
 in that feeder and to the water taken through that feeder are the same, whether it holds under the limited grant, as contended by the defendant, or under and by virtue of the possession originally taken and continuously held, as claimed by the plaintiff, since, if it takes by grant, it must rely upon the terms of the grant, which, according to contemporaneous construction, did not grant the water privileges of Abner Enoch theretofore acquired for his mill seats, etc., and, if it takes by possession, the extent of its title must be measured by the extent of its possession.
 

 We understand the rule to be that a designation in a grant of the purpose for which water is to be used, or a reservation from the grant of water rights for a designated purpose, in the absence of words indicating an intention to prohibit the use of the water for any other purpose, does not restrict the grantee in the grant, or the grantor making the reservation, to the use designated, but only restricts him to the quantity of water the use designated would require; that such a designation is not a limitation of the character of the use, but is a limitation of the quantity of the use. Farnham on Water and Water Eights, Vol. 3, Section 762;
 
 Hines
 
 v.
 
 Robinson,
 
 57 Me., 324, 99 Am. Dec., 772;
 
 Johnston
 
 v.
 
 Hyde,
 
 33 N. J. Eq., 632;
 
 Hurd
 
 v.
 
 Curtis,
 
 48 Mass., (7 Metc.), 94; 40 Cyc., p. 751.
 

 The rule is stated in 40 Cyc., p. 746:
 

 “Eights or easements in the use of water may be excepted or reserved from the operation of a conveyance of land, with substantially the same result as in the case of an original grant, pro
 
 *456
 
 vided appropriate words are used, and the reservation may be available to the successors or assigns of the grantor, even without words of inheritance. ’ ’
 

 The state, however, is now asking this court to construe the language, “all water privileges reserved to myself as to mill seats, etc.,” strictly against Abner Enoch, upon the theory that by the grant the state acquired a title in fee simple to the land, which necessarily carried with it all the water rights, and that the reservation was effective, not to carve out of that grant the water rights of Abner Enoch, but only to create in Abner Enoch a new right as a concession or consideration for the grant; in other words, the present position of the state is that, by the grant, Abner Enoch divested himself of his preacquired water rights, and that the water rights he thereafter had, if any, have their source in the reservation which the state now undertakes to interpret as an obligation creating a new right assumed by it by its acceptance of the grant, and that being a new obligation, created by the words in the grant and the acceptance by the state, the scope and extent of the right will be measured by the strict words creating it, and that, the words creating it containing no words of perpetuity, the right terminated upon Abner Enoch’s death.
 

 "Whatever construction we might give to the words, were we interpreting similar words approximately contemporaneous with their employment, we know of no principle of justice, equity, or common honesty, which would justify us in giving to this ambiguous language, at this late date, an interpretation different from the interpretation
 
 *457
 
 which the state and Abner Enoch gave to it at the time the words were first employed, and which all parties thereto have continued to give to it for 100 years. Indeed, the words of reservation or exception are such that, had the parties thereto as a contemporaneous construction treated the grant as a grant of the then existing water rights of Abner Enoch, and the creation of a new right to him for life, we would as readily adopt that interpretation, but the state, the defendant, and its predecessors in title, having placed upon the grant and its words of reservation or exception the interpretation that the prior acquired water rights of Ahner Enoch were thereby preserved to him, his heirs and assigns, this court now adopts that interpretation and holds that the reservation was a reservation from the grant of those water rights, and amounted to an exception in the grant.
 

 The averments of the second defense with reference to a contract entered into subsequent to the execution of the. deed, by Abner Eno6h to the state are not sufficient to state a defense, and, were this contract averred as a separate defense, a demurrer to that defense as pleaded in the amended answer would be sustained.
 

 The third defense, that the state, having abandoned the purpose for which it acquired its Miami and Erie Canal water rights, is now without authority of law exercising those water rights for a wholly different purpose, is met by the two principles heretofore discussed.'
 

 (1) That in its proprietary capacity, its property rights are the same as those of private proprietors.
 

 (2) That the specific purpose for which it ac
 
 *458
 
 quired water rights does not limit it to the use of those rights for that purpose, unless it is expressly prohibited from using them for any other purpose, but the specific purpose for which they were acquired operates as a limitation of quantity and not of character of use.
 

 The demurrer to the third defense is sustained.
 

 In view of our conclusion that the first and second defenses each state a defense, the averment of the fourth defense is inconsequential, and the demurrer thereto is sustained.
 

 With regard to the fifth defense, it may be said that the rights of the defendant having been predicated upon the water rights acquired by Abner Enoch prior to his grant to the state, and those rights having been preserved to him by the limitation expressed in the grant, and the contemporaneous interpretation thereof, acquiesced in by the parties interested up to the date of the filing of this action, and this court now having preserved to the defendant those rights by its adoption of the contemporaneous construction of the parties, and the defendant having averred in its answer filed herein that it is exercising the water rights acquired by Abner Enoch, taking the water he was entitled to take, and no other, the rights of the parties hereto will be measured by the rights Abner Enoch acquired and reserved from the grant to the state.
 

 The doctrine of estoppel, therefore, as applicable to this case, can neither add to nor detract from those rights.
 

 The demurrer to the fifth defense is sustained.
 

 The answer contains the averment that the de
 
 *459
 
 fendant “now is in the enjoyment and úse of the said reserved water and none other, and denies that it has taken or used any water other than so reserved, or that it now does so.”
 

 In the present state of the pleadings, unless the state desires to go to trial upon that issue, judgment will be rendered for the defendant.
 

 Demurrer to answer overruled in part and sustained in part.
 

 Marshall, C. J., Matthias, Day, Allen and Kinkade, JJ., concur.