Marshall, C. J.,
 

 dissenting. I am not able to agree
 

 either with the reasoning or the conclusions reached by the majority in this case. I do, however, concur in the concessions stated in the majority opinion. I agree that this ease has nothing in common with
 
 *345
 
 cause No. 21246,
 
 ante,
 
 309, this day decided. I agree with the majority of the court that a school building is not a trade fixture. It follows from this that it is a general fixture and therefore subject to the rule declared in
 
 Teaff
 
 v.
 
 Hewitt,
 
 1 Ohio St., 511, 59 Am. Dee., 634, because it is a building of a permanent nature set upon stone foundations. I also agree that the deed contains a clause limiting the use of the land to school purposes, and that on default thereof the property reverts to the grantor. I also agree that the school at that particular location was legally, regularly, and definitely abandoned, and that the premises will not in the future be devoted to school purposes. I also agree that Section 7730-1, General Code, has nothing to do with this controversy. I put this action upon a broader ground than that stated in the majority opinion. It is not in the power of a Legislature by statute to create or destroy property rights. This section did not purpose to do so. If the buildings belong to the school board, the board may sell them four years after- the abandonment of the purpose to conduct schools at that location. If the buildings belong to the land, and the land reverts to the grantor, the board has no title to either the buildings or the land and could never therefore at any time legally sell the same. This case therefore resolves itself into a question of ownership. The majority opinion disposes of that question upon the theory that any clause of reversion and forfeiture affecting buildings would be illegal and void, and as a result of such claimed illegality the law of fixtures, which would apply without- question between individuals, will be denied application. This form of conveyance, and
 
 *346
 
 similar limitations upon the nse of property conveyed, and similar clauses of reverter and forfeiture, have been employed for more than 100 years by rural boards of education and hundreds and perhaps thousands of school buildings have been abandoned and forfeited' in the rural districts of the state during the last 100 years, yet in not a single reported case have the courts of this state ever branded such transactions with the taint of illegality. I agree that members of school boards are public officers, and that their official duties are prescribed, and that their contractual powers are fixed, and that all doubts relating to the exercise of those powers and duties should be resolved in favor of the public. I deny, however, that there is any doubt about the duties of school boards in cases similar to the present controversy, and I deny that there is any doubt as to the strict regularity of this transaction in all its phases. I agree that a school board cannot give away school property, and th,at it would be
 
 ultra vires
 
 to make a conveyance of a school building without consideration, but I deny that this transaction has any of the elements of a gift. The reference in the majority opinion to' Section 3953, Revised Statutes (now Section 7579, General Code), has no application to this controversy. Section 7587, General Code, was in full force and effect in 1910, that statute providing that the school levies shall be divided by boards of education into four funds, viz., tuition fund, building fund, contingent fund, and bonds, interest, and sinking fund. It was always the practice to pay the proceeds of the state common school fund into the first of these funds, viz., the
 
 *347
 
 tuition fund. Not a penny of the cost of school buildings ever was or ever could be legally drawn from the state common school fund. Section 3971, Eevised Statutes (now Section 4756, General Code), forbids the sale of property of - a board of education exceeding $300 in value otherwise than by public auction; but this has no application to the present controversy. If the building is adjudged to be the property of the board of education, and it is worth more than $300, it is of course its duty to sell at public auction. If it is adjudged to belong to the grantor of the deed it should not sell it at all.
 

 The majority opinion discusses this controversy upon the theory that the grantor and the members of the board entered into an unlawful transaction to do indirectly that which they could not do directly. It is apparently a part of that theory that the action .of the school board in accepting a deed with a clause of forfeiture and reversion, was for the same reason an illegal act, and that the board could accept the conveyance, and that that portion of the transaction would be legal, but the condition in the deed, which operated as a part of the consideration, would be a nullity. First of all, let us inquire whether .there was any illegality about that transaction, and whether the board could legally accept a conveyance containing a condition of reverter and forfeiture. If William Schwing had refused to make . a conveyance in fee simple without condition or limitation, the board of education would have had no recourse except to condemn the property for school purposes. By such condemnation the board would have acquired only the right to use the premises for school purposes, and upon abandonment of
 
 *348
 
 the school the land would have reverted to thé grantor. In such event the board of education would have acquired exactly the same title which it received by deed. The authorities on this point are so clear that citation is unnecessary. Inasmuch as it is conceded that the doctrine of trade fixtures does not apply, any permanent structure erected on the land, even though erected for school purposes, became a part of the real estate, unless it shall be held that the law of fixtures has no application to public property. If this is the law, it is quite certain that it has never been so declared in any reported case to be found anywhere. That the contrary is the law must be accepted as conclusive because it has been the uniform custom in the state of Ohio for one hundred years.
 

 "We should not lose sight of certain social and economic facts which have a strong bearing upon this controversy. The locations of one-room school buildings in the rural districts were subject to constant change prior to the time the centralization plan became effective in Ohio. No farmer sought to make a sale to the board of education. The school building was of necessity located either at the geographical center of the district, or the center of population, and wherever that point proved to be the school was located, and in the majority of cases the conveyance was made for a nominal consideration, certainly with no idea of profit to the farmer. As the population increased the center of population naturally shifted, and rural school buildings were constantly being changed from one location to another. Buildings were erected in rather flimsy fashion, and building materials were so cheap that
 
 *349
 
 the inconvenient bnilding of former days always gave place to a larger building, better adapted to school purposes. All roads were unimproved and little attention was paid to the character of highway upon which the building was located. As highways began to be improved it became more and more important to locate the buildings upon improved highways. In the early days the farmers were much more interested in having a good school than in making a small profit out of a possible abandoned school building. The farmers of those days had not caught the spirit of the present generation in seeking to sell property to the public at grossly exorbitant prices.
 

 The majority opinion apparently proceeds upon the further theory that a building erected with public funds becomes subject to a rule different from that which would apply as between individuals. Under a monarchial government such a theory might have some recognition. Under our form of government, sovereignty is not separated from the people, who are themselves sovereign. Numerous cases have been decided by this court in the pást clearly establishing that the state has no advantage over individuals, and that any contract between private parties and public authorities must be subject to the same rules, as though both parties to the contract were individual citizens. In
 
 State
 
 v.
 
 Exr. of Buttles,
 
 3 Ohio St., 309, this court declared: “When the state appears in her courts as a suitor, to enforce her rights of property, she comes shorn of her attributes of sovereignty, as a body politic, capable of contracting, suing, and holding property, subject to those .rules of justice and right, which in her sov
 
 *350
 
 ereign character she has prescribed for the government of her people.”
 

 The same principle is given out with equal clarity in
 
 Cleveland Terminal & Valley Rd. Co.
 
 v.
 
 State, ex rel. Hogan, Atty. Gen.,
 
 85 Ohio St., 251, 97 N. E., 967, 39 L. R. A. (N. S.), 1219. The same principle was declared in
 
 State, ex rel. Crabbe, Atty. Gen.,
 
 v.
 
 Middletown Hydraulic Co.,
 
 114 Ohio St., 437, 151 N. E., 653, in which all the members concurring in the majority decision in this case, save one, gave their concurrence. The Ohio cases on this point have been so emphatic and so uniform that it is difficult to understand upon what theory the majority opinion makes the claim that one dealing with a school board can do so upon any different basis than one dealing with an individual. The cases outside' of Ohio are equally uniform in declaring that a contract between a citizen and the state, or any political subdivision of the state, is construed by the same rules of interpretation as a contract between individuals, and that conditions subsequent in a deed will apply with equal force to the public and to private individuals. No court in any state in the Union has ever held the contrary.
 

 The majority opinion concedes that “an extensive search of the digests discloses a surprising want of authority upon the particular question, and also some authority counter to this proposition.
 
 New Hebron Consolidated School Dist.
 
 v.
 
 Sutton
 
 (Miss. 1928), 118 So., 303.” We have also made a diligent search, and think it is more accurate to say that all the authorities are counter to the proposition stated in the majority opinion. The essential principles decided in the Mississippi case are, we think, on all fours with the instant case.
 

 
 *351
 
 In that case preraises were purchased by the school board to be used for the purposes of a public school, with the understanding and agreement that when it ceased to be used for the purposes of a public school the land should revert. That school district was later merged into a consolidated district, and it was then desired to discontinue the school at that place, and to remove the building. The court held, however: “When the building was erected on this land it became a fixture, and the fact that it was erected to effectuate the purpose for which the land was conveyed to the school district is ineffectual to prevent it from becoming a part of the realty.”
 

 The fourth paragraph of the syllabus states: “School building is subject to reversionary clause in deed conveying land for school purposes, notwithstanding it was erected and devoted to a public use, since conditions subsequent in a deed apply with equal force to public as to private individuals.”
 

 The Mississippi case is, therefore, a very definite authority in support of our position.
 

 By the terms of the deed in the instant case the school board would not be permitted to use the premises in question for any purposes except school purposes, and, after four years abandonment, the title reverts. This frame school building could not be torn down and salvaged with any profit to the school board. If the school board should tear down the property it would probably leave a pile of rubbish. The board is making no claim to the land, and under the well-known rule of law applying to fixtures it cannot legally make any claim to the building.