Zimmerman, J.
 

 On January 15, 1944, the Board of Education of the Shelby County School District adopted a plan of territorial organization for the various school districts under its supervision. By a part of that plan, the East Salem Local School District was obliterated and the territory of such district was transferred to two adjoining districts,
 
 vis.,
 
 the Perry Local School District and the J ackson Center Village School District — a part to each.
 

 Within a short time afterwards, a petition was' filed with the county board carrying the signatures of more than 75% of the resident electors of the East Salem school district and requesting that the territory described in such petition, comprising what was then the major portion of the East Salém Local School District, be transferred to the Sidney City School District.
 

 On March 3, 1944, the county board adopted a plan of territorial organization, superseding the original plan of January 15, 1944, by which the described territory of the East Salem school district was trans
 
 *396
 
 ferred to the Sidney City School District as requested and as authorized by Section 4831-13, General Code. Such later plan of organization was published in accordance with Section 4831-2, General Code.
 

 The plan as'published was then duly transmitted to the Superintendent of Public Instruction of the State of Ohio, as provided by Section 4831-4, General Code.
 

 On August 17, 1944, the state superintendent, purportedly acting under Section 4831-6, General Code, approved generally the plan submitted by the county board, which in the main left the territorial organization of the school districts of the county as they were in 1943. However, the state superintendent rejected the plan -so far as it transferred the territory of the East Salem district to the Sidney City School District and in place .thereof he formed a single local school district out of the territory comprising the Jackson Center Village Local School District, the East Salem Local School District and the Perry Local School District.
 

 Upon receipt of the plan approved by the state superintendent, the county board gave notice in writing to the various local boards as prescribed by Section 4831-7, General Code.
 

 Objections to this" plan were filed with the state superintendent by the boards of education of the East Salem Local School District and the Perry Local School District, as -provided by Section 4831-8, General Code. Upon notice to all concerned, representatives of the state superintendent conducted a hearing on such objections at the courthouse in Sidney in compliance with Section 4831-9, General Code.
 

 Thereafter, the state superintendent, purporting to act under Section 4831-11, General Code, announced the finally approved plan, which abolished the East Salem Local School District and placed a part of the
 
 *397
 
 territory of that district in th.e Jackson Center Village Local School District and the remaining part in the Perry Local School District, both of such' districts being in the Shelby connty school system.
 

 The county board, being notified by the state superintendent of his final determination, passed the resolutions • as outlined in Section 4831-12, General Code, carrying the finally approved plan into effect. Such action-precipitated the described suit for an injunction.
 

 It is to be remembered that the plan of territorial organization adopted by the county board on March 3, 1944, provided for a transfer of the territory of the East Salem Local School District to the adjoining Sidney City School District as requested in the petition signed by more than 75% of the resident electors of the East Salem district and in accord with the requirement contained in Section 4831-13, General Code. It is also to be noted that no protest against such arrangement was registered by 51% of the electors of a local school district affected thereby as permitted by Section 4831-3, General Code.
 

 Section 4831-6, General Code, prescribing the duty of the state superintendent with respect to a teriitorial organization proposed by a county board recited that on or before a designated time “the Superintendent of Public Instruction shall approve, with such modification as he deems proper, each plan of territorial organization of school districts submitted to him by county boards of education.’?
 

 The succeeding five sections of the Code all spoke of
 
 modifications
 
 by the state superintendent of territorial organization plans proposed and submitted by county boards of education.
 

 Concerning the plan as finally approved by the state superintendent, Section 4831-11, General Code, read:
 

 “Such approved plan may be the original plan as
 
 *398
 
 submitted by the county board of education or any modification thereof, and such plan shall be final
 

 Prom an examination of the sections of the Code which apply to the present case and which related to the territorial organization of school districts, particularly Sections 4831-3 and 4831-13, .General Code, it is apparent that the General Assembly intended that the county boards of education and the residents of the school districts affected should have considerable control over the formation and arrangement of school' districts in counties. Emphasizing such intent is the fact that the power of the state superintendent is limited to the
 
 modification
 
 of plans submitted by county boards.
 

 As we view the matter, the decision in this case turns primarily on whether the plan of organization as finally approved by the superintendent constituted a
 
 modification
 
 of the plan submitted by the county board.
 

 Of course, it is a cardinal rule in the interpretation of statutes that the language used is to be given its ordinary and accepted meaning, unless a contrary purpose is plain.
 

 In Black’s Law Dictionary (3 Ed.), the word, “modification,” is defined as “a change; an alteration which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject matter intact.” And the meaning given the word, “modify,” in the same dictionary is, “to alter; to change in incidental or subordinate features; enlarge, extend; limit, reduce.”
 

 Speaking on the subject in the case of
 
 State
 
 v.
 
 Tucker,
 
 36 Ore., 291, 301, 61 P., 894, 897, 51 L. R. A., 246, 250, the court held that the term, “modify,” implies no power to destroy or to create or bring into existence; it contemplates only the power to change or vary in
 
 *399
 
 some particular an already created or legally existing thing.
 

 In the instant case, the plan submitted to the state superintendent by the county board transferred the East Salem Local School District to the adjoining Sidney City School District in conformity with the expressed wishes of over 75% of the resident electors of the first-mentioned school district. ' Dissatisfied with such proposal, the state superintendent substituted an entirely new arrangement by abolishing the East Salem district and dividing the territory therein between two other districts in the county. In our opinion this did not constitute a modification of the plan offered by the county board but represented a completely different disposition in accordance with the independent judgment of the superintendent.
 

 We are, therefore, in agreement with the Court of Appeals that in pursuing the course he did; the state superintendent exceeded the powers conferred upon him by statute and is chargeable with -.an abuse of discretion.
 

 Counsel for appellants argue that if the determination of the Court of Appeals is approved, the cause should be remanded to the Court of Common Pleas to afford the appellants opportunity to present evidence in support of their claims. Ordinarily this would be the proper procedure, but here all the facts necessary for a decision are before the court, and counsel for appellants in their briefs and on oral argument have not enlightened the court as to the evidence they would or could produce to alter the conclusion reached. Everything that was done with regard to the territorial organization of the various school districts of Shelby county in 1944 is contained in the record, and with the complete picture before it the court has determined that the state superintendent overstepped the
 
 *400
 
 powers given Mm under the applicable statutes by substituting a new plan.
 

 Therefore, the judgment of the Court of Appeals is affirmed.
 

 Judgment- affirmed.
 

 Weygandt, C. J., Turner, Matthias, Hart, Sohngen and Stewart, JJ., concur.