**COLLEGE CORNER LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, Appellee,**

**v.**

**WALKER et al., Appellants.**

[Cite as *College Corner Local School Dist. Bd. of Edn. v. Walker* (1990), 68 Ohio App.3d 63.]

Court of Appeals of Ohio,
Butler County.

No. CA89–09–134.

Decided June 18, 1990.

*Means, Bichimer, Burkholder & Baker Co., L.P.A., Robert T. Baker* and *Richard W. Ross,* for appellee.

*Wilfrid G. Dues,* Prosecuting Attorney, for appellants.

---

*Per Curiam.*

Defendants-appellants, James N. Walker, Preble County Superintendent of Schools, and Betty Mong, Preble County Auditor, appeal from a judgment of the Butler County Court of Common Pleas in favor of College Corner Local School District Board of Education ("the board").

On August 8, 1988, the board filed a complaint for declaratory and injunctive relief against Walker. It later amended the complaint, adding Mong as a defendant. In the amended complaint, the board sought a judgment declaring the College Corner Local School District ("the district") to be a legally constituted school district and permanent restraining orders enjoining Walker from reassigning high school students from the district without the board's consent and enjoining Mong from withholding the district's share of local tax revenues. Subsequently, a preliminary restraining order was issued by agreement of counsel maintaining the status quo until a decision of the trial court.

On June 9, 1989, the parties entered into a lengthy joint stipulation of facts. The case was submitted to the trial court on the stipulation of fact, oral arguments and briefs by the parties. The pertinent facts are as follows.

The district is and has at all pertinent times been a duly chartered school district. It is located in Preble County and part of Butler County, Ohio. Included in this geographic region is the community of College Corner/West College Corner, which straddles the boundary between Indiana and Ohio. The east side of the community is the village of College Corner, Ohio, and the west side is West College Corner, Union County, Indiana.

In 1893, the district joined with the Indiana school district (now called "corporations") in which West College corner was located in organizing a joint school district to educate the children in the College Corner/West College Corner community. This action was taken after receiving the approval of the Ohio Attorney General. The joint school district erected the Union School in College Corner/West College Corner, symbolically situated on the state boundary. Students in the joint district from each state went to Union School and attended classes within the building in both Ohio and Indiana. Both Ohio and Indiana public funds were used to pay the school's expenses, including the purchasing of materials and the hiring of teachers.

In 1921, both the Ohio and Indiana legislatures enacted nearly identical statutes, authorizing joint educational efforts by school districts from adjacent states. The statutes authorized joint school districts to purchase real estate and supplies, construct buildings, employ teachers and do other things necessary for the operation of a cooperative system of education. G.C. 7620–1 (now R.C. 3313.42) and Ind.Code Ann. 20–4–6–1.

The district, in cooperation with the Union County, Indiana School Corporation and its predecessors, has operated the joint school district until the present time pursuant to this statutory authority. The state of Ohio had provided its proportionate share of the funds for the school district throughout its existence. Over the years, the board has repeatedly sought and received the advice of state of Ohio officials concerning the operation of the joint school district. For example, in the 1969–1970 school year, the Ohio Department of Education, the State Board of Education and Auditor of State approved a plan to send vocational students from the joint district to an Indiana vocational school. The plan included payments to the Indiana school for the cost of educating Ohio students.

In 1971 to 1972, during a reorganization and consolidation of Indiana's schools, the state of Indiana considered sending high school students from the joint school district to Union County High School, located in Liberty, Indiana. The board sought the advice of the Ohio Department of Education concerning its plan to send Ohio high school students to the Indiana high school on a tuition basis. The department expressly approved of the plan, including a provision for the board to pay tuition to the Union County School Corporation and transportation expenses. Accordingly, Ohio high school students from the district have attended Union County High School in Indiana since 1972. Elementary students, grades kindergarten through eight, from the joint district continue to attend the Union School in College Corner/West College Corner.

This arrangement continued without interruption until 1988. State audits conducted in 1974, 1976, 1978, 1982, 1983, 1985, 1986 and 1987 recognized the unique nature of the joint school district without raising any question. Similarly, the Ohio Department of Education recognized the unique situation in its periodic evaluations and did not question the arrangement. The department also recognized that the district exceeds minimum standards for elementary and secondary education.

In 1988, a state examiner for the auditor of state cited the district for noncompliance with R.C. 3311.29 in that it failed to maintain public schools consisting of grades kindergarten through twelve. The examiner did not make a complete investigation and failed to review the history of the joint

school district, including statutory authority, interstate agreements and prior approvals by the Preble County Board of Education, the Ohio Department of Education and the Auditor of State.

In June 1988, Walker, as superintendent of schools, notified the board that he intended to reassign high school students residing in the district to another school district. The board adopted a resolution disproving such action. Subsequently, pursuant to the auditor's finding of noncompliance, the state board of education adopted a resolution of intent to withhold state funds from the district.

In August 1988, the board instituted the instant action against Walker. Subsequently, Mong, as Preble County Auditor, advised the board that she intended to withhold payment of local tax revenue to the district until its legal status could be determined. As a result, Mong was named as an additional defendant.

Based upon these facts and the arguments of the parties, the trial court held that the district is a "duly constituted school district under Ohio law" with the authority to maintain a joint school district and to send its high school students to Union County High School on a tuition basis. It enjoined Walker from reassigning students from the district to another district without the board's prior approval and Mong from withholding from the district its lawful share of tax revenues. This appeal followed.

In their sole assignment of error, Walker and Mong state that the trial court erred in declaring the district to be a legally constituted school district and by permanently enjoining them from taking action required of them by law. They argue that the district does not fulfill the obligation of R.C. 3311.29 to maintain grades kindergarten through twelve within its district by paying tuition to an out-of-state high school to educate its students in grades nine through twelve. We find this assignment of error is not well taken.

The pertinent statutes involved in this case are R.C. 3311.29, 3313.42 and 3317.024. Appellants rely on R.C. 3311.29 in arguing that the district is not a legally constituted school district. It provides:

"Except for a joint vocational school district, no school district shall be created and no school district shall exist which does not *maintain within such district public schools consisting of grades kindergarten through twelve* and any such existing school district not maintaining such schools shall be dissolved * * *. The state board of education may authorize exceptions to school districts where topography, sparsity of population, and other factors make compliance impracticable.

"The superintendent of public instruction is without authority to distribute funds under sections 3317.022 to 3317.025 of the Revised Code to any school district that does not maintain schools with grades kindergarten through twelve and to which no exception has been granted by the state board of education." (Emphasis added.)

There is no dispute that since 1972, the board has not maintained grades nine through twelve within its Ohio geographic boundaries and that it has never been granted an exception by the state board of education. The board contends, and the trial court held, that the board is in compliance with the statute by virtue of its agreements with the Union County School Corporation establishing a joint school district and the latter's acceptance of Ohio high school students who are residents of the district on a tuition basis.

R.C. 3313.42 authorizes joint arrangements with adjacent school districts of another state. It provides:

"(A) When in the judgment of a board of education of any school district in this state, lying adjacent to a school district of another state, the best interests of the public schools can be promoted by purchasing school grounds, repairing or erecting a schoolhouse, and maintaining them jointly between the two adjacent school districts, the board of education of the school district of this state so situated may enter into an agreement with the school authorities of said adjacent school district for the purpose of purchasing school grounds, repairing or constructing a school building, purchasing school furniture, equipment, appliances, fuel, employing teachers, and *maintaining a school.* The board of education of this state may levy taxes and perform such other duties in maintaining such joint school as are otherwise provided by law for maintaining the public schools in this state.

"In carrying out this section the school district shall pay such proportion of the cost of purchasing school grounds, repairing or erecting a building, and in maintaining the joint school as is equitable and just in the judgment of the board of education and trustees of the two adjacent school districts." (Emphasis added.)

Also, R.C. 3317.024(B) grants additional state monies to " * * * each joint state school district for the operation of each high school and each elementary school maintained within such district and for capital improvements for such schools."

▮ As these statutes relate to the same subject matter in a case calling for application of all of them, they should be construed together. In construing these statutes, it is the duty of the court to give effect to all their terms and provisions and to render them compatible with each other whenever possible.

*Sentinel Security Systems v. Medkeff* (1987), 36 Ohio App.3d 86, 87, 521 N.E.2d 7, 8.

R.C. 3311.29 requires a school board to "maintain" a "school" for grades kindergarten through twelve "within such district." Likewise, R.C. 3313.42 and 3317.024 refer to "maintaining a school." The statutes do not define these terms. R.C. 1.42 provides that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." Therefore, the language used is to be given its ordinary and accepted meaning unless a contrary purpose is plain. *Smith v. Ray* (1948), 149 Ohio St. 394, 398, 37 O.O. 89, 91, 79 N.E.2d 116, 118. Additionally, where a statute contains an ambiguous term, a court interpreting the statute must determine what the legislature intended the statute to mean. "R.C. 1.49(A) through (F) state that * * * courts may look to the object sought to be attained, the circumstances under which the statute was enacted, the legislative history, common law or former statutory provisions, the consequences of a particular construction and the 'administrative construction' of the statute." *In re Petrak* (1984), 18 Ohio App.3d 75, 76, 18 OBR 240, 241, 480 N.E.2d 1136, 1137.

Appellants argue that R.C. 3313.42 gives the power to operate a joint school, not a joint school district and that the district must justify its existence under R.C. 3311.29 before it can claim the power to operate a joint school under R.C. 3313.42. We find no merit in this argument as we find that the district meets the requirement of maintaining a school with grades kindergarten through twelve as required by R.C. 3311.29.

Both parties argued in the trial court that the matter hinged upon the definition of "maintain." Appellants argued that to "maintain" a school implies "an active, hands-on management and control" and that the district's practice of sending its high school students to a high school in Indiana does not fall within the definition of "maintain." However, looking to common usage, the trial court relied upon Webster's Third New International Dictionary (1981) 1362, which defines "maintain" as follows: "1: to keep in a state of repair, efficiency or validity: preserve from failure or decline * * * 2a: to sustain against opposition or danger: back up * * * b: to uphold in argument: contend for * * * 3: to persevere in: carry on: keep up * * * 4: *to provide for: bear the expense of* * * * 5: to affirm in or as if in argument * * * 6: *to assist.*" (Emphasis added.)

The trial judge went on to conclude that " 'maintain' does not necessarily mean active participation beyond making tuition payments and providing transportation. Webster's definitions [four] and [six] are more applicable to the College Corner circumstances than the narrow meaning [advanced by

appellants]. Certainly, they are more consistent with long-standing officially authorized practice, and both apply to the [board's] payment of tuition."

We agree with the trial court's conclusion. We first note that Black's Law Dictionary (5 Ed.1979) 859, provides a similar definition. To "maintain" means to "bear the expense of; * * * furnish the means for subsistence or existence of; * * * provide for; * * * supply with what is needed; support; sustain * * *." Under these definitions, the board could "maintain" a school by making tuition payments to cover the Indiana school's expenses for educating Ohio children.

Appellants also contend that R.C. 3311.29 requires the board to maintain a school for grades kindergarten through twelve "within the district." The board argues that R.C. 3313.42 allows for the operation of a joint school district and that the high school students were educated within the joint district. Appellants counter the board's argument by claiming that R.C. 3313.42 only provides for operation of a joint school building, not a district. First, appellants' argument ignores the express language of R.C. 3317.024 which grants state funds to "joint school district[s]." Second, our reading of the statutes convinces us that the word "school" means more than just a classroom building. It connotes an institution or organization dedicated to providing education. R.C. 3313.42 allows a school district to enter into an agreement with a school district from an adjacent state for the purpose of purchasing school grounds, repairing or construction of a *school building,* purchasing school furniture, equipment appliances, fuel, *employing teachers,* and *maintaining a school.* The statute first provides for the construction and operation of a school building but then goes on to provide for the hiring of teachers and maintaining a school. If the legislative intent was to restrict the joint state venture to the school building, then the words "hiring teachers" make no sense and the words "maintaining a school" are redundant. Additionally, the statute describes construction and repair of the "school building" separate and apart from "maintaining a school." Thus, the legislative intent was to distinguish the building where classes are conducted from the educational institution of a "school" comprised of students, curricula and faculty.

Further, the record thoroughly establishes that from the very beginning the cooperative venture between the Indiana and Ohio school district was not limited to the four walls of the schoolhouse but rather designed to foster a joint educational program which would benefit the children of the College Corner/West College corner community. Ohio officials throughout the years have treated the joint venture as more than just construction of a schoolhouse, but a joint enterprise to provide an education program which permitted all children within the community to be educated together. Indeed, correspon-

dence in the record from state agencies refers to the joint school district. It is a well-recognized principle of statutory construction that "administrative interpretation of a given law, while not conclusive, is, if long continued, to be reckoned with most seriously and is not to be disregarded and set aside unless judicial construction makes it imperative so to do." *State, ex rel. Auto. Machine Co., v. Brown* (1929), 121 Ohio St. 73, 75–76, 166 N.E. 903, 904. The administrative interpretation will not be disturbed "except for very cogent reasons." *State, ex rel. Crabbe, v. Middletown Hydraulic Co.* (1926), 114 Ohio St. 437, 453, 151 N.E. 653, 658. See, also, *Consumers' Counsel v. Pub. Util. Comm.* (1984), 10 Ohio St.3d 49, 50–51, 10 OBR 312, 313–314, 461 N.E.2d 303, 304.

Thus, R.C. 3313.42 permits the operation of a joint school district and R.C. 3317.024 allows funds to be paid to schools maintained within the joint school district. There is no requirement that all of grades kindergarten through twelve be situated on the Ohio side of the district; rather, the statutory requirement is satisfied if these grades are offered somewhere within the joint district and Union County High School, although physically situated in Indiana, lies within the joint school district. We conclude that the district maintains grades kindergarten through twelve within the joint school district and, therefore, it is legally constituted under Ohio law.

Further, we find it highly significant that the various Ohio agencies have recognized the unique nature of the joint school district since its inception and have approved and even facilitated the district's plan to send its high school students to Union County High School since 1972. This administrative interpretation of the applicable statutes must be given great weight and we find "no cogent reason" to disturb it. *Crabbe, supra; Auto. Machine Co., supra.* This case is unique. There is no other joint school district involving an Ohio district and a district in another state. It is highly unlikely that similar circumstances will ever be encountered. There is no dispute that if appellants were to take their contemplated actions, the district would be irreparably damaged. Appellants, under the particular circumstances of this case, have not shown any valid reasons why a long-standing administrative interpretation should be set aside. The applicable statutes do not require us to do so, nor does public policy. Accordingly, the judgment of the trial court is affirmed and appellants' sole assignment of error is overruled.

*Judgment affirmed.*

JONES, P.J., HENDRICKSON and WILLIAM W. YOUNG, JJ., concur.