[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Joshua Bledsoe ("Bledsoe") appeals from a judgment of the Montgomery County Court of Common Pleas, Probate Division, which found that his consent to the adoption of his daughter by Zachary James Satterfield ("Satterfield") was unnecessary.
The procedural history of the case is as follows. The evidence presented in the trial court will be discussed when we address the assignments of error.
Amber Dawn Bledsoe ("Amber") was born to Bledsoe and Jeri Lynn Ward on December 21, 1994, and the parents' relationship ended shortly thereafter. By that time, Bledsoe had become involved with Robin King and, in the following months, Ward became involved with Satterfield. Ward later married Satterfield and will hereinafter be referred to as Mrs. Satterfield.
On November 19, 1997, Satterfield filed a petition for adoption of Amber. The petition alleged that Bledsoe's consent to the adoption was unnecessary because he had failed, without justifiable cause, both to communicate with Amber and to provide for her maintenance and support for a period of at least one year immediately preceding the filing of the petition. On May 11, 1998, Bledsoe filed an objection to the adoption. The trial court conducted a hearing on the matter on July 13, 1998. In an August 26, 1998 decision and entry, the trial court concluded that Bledsoe had "failed to pay support or communicate for the required one year period" and that his consent was therefore unnecessary.
Bledsoe asserts two assignments of error on appeal, which we will address together.
 I. THE TRIAL COURT ERRED IN RULING THAT MR. BLEDSOE'S CONSENT TO THE ADOPTION WAS NOT REQUIRED, BECAUSE MR. BLEDSOE MAINTAINED JUSTIFIABLE CAUSE FOR HIS FAILURE TO COMMUNICATE WITH HIS MINOR CHILD.
 II. THE TRIAL COURT ERRED IN RULING THAT MR. BLEDSOE'S CONSENT TO THE ADOPTION WAS NOT REQUIRED, BECAUSE MR. BLEDSOE "MAINTAINED AND SUPPORTED" HIS CHILD DURING THE REQUISITE PERIOD.
Bledsoe contends that the trial court erred in concluding that his consent to Amber's adoption was unnecessary. Specifically, Bledsoe claims that his failure to communicate with Amber was justifiable in that it was precipitated by Satterfield's violence toward him and that he had not failed to support her in the year preceding the filing of the petition for adoption.
R.C. 3107.07(A) provides that a parent's consent to the adoption of his child is not required if the court finds that the parent has failed without justifiable cause either to communicate with the child or to provide for the maintenance and support of the child as required by law or judicial decree for a period of at least one year immediately preceding the filing of the petition for adoption. The party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to communicate with the child or failed to support the child without justifiable cause. In re Adoption of Masa (1986),23 Ohio St.3d 163, paragraph one of the syllabus; In re Adoptionof Holcomb (1985), 18 Ohio St.3d 361, paragraph four of the syllabus. For the allegations to be proven by clear and convincing evidence, the evidence must "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. It is for the probate court, as the finder of fact, to assess the witnesses' credibility, to determine the accuracy of their testimony, and to ultimately determine whether justifiable cause exists for the failure of a natural parent to communicate with or to support his child during the relevant one year period. Holcomb, supra, at 367, citing Inre Adoption of McDermitt (1980), 63 Ohio St.2d 301.
Bledsoe makes two arguments in regard to his alleged failure to communicate with Amber in the year preceding the filing of the petition for adoption. First, Bledsoe claims that he had not failed to communicate with Amber because he had seen her, albeit accidentally, at a festival. Second, Bledsoe contends that he had had justifiable cause for any failure to communicate because the Satterfields had discouraged his communication with Amber through violence and threats of violence and through their failure to provide him with their address. We will address these arguments in turn.
The supreme court has held that the legislature intended to adopt an objective test for analyzing the failure of communication discussed in R.C. 3107.07(A), one that did not require the courts to subjectively determine whether communication was meaningful, substantial, significant, or regular. Holcomb, supra, at 366. Under this test, failure by a natural parent to communicate with his or her child is sufficient to authorize adoption without the parent's consent only if there is a complete absence of communication for the statutorily defined one-year period. Id. at 366-367. An accidental communication within the one-year period constitutes communication within the meaning of R.C. 3107.07(A).In re Adoption of Hudnell (1996), 113 Ohio App.3d 296, 303-304.
Because Satterfield filed his petition for adoption on November 19, 1997, the relevant period during which Bledsoe's communication with Amber should have been examined was November 19, 1996 through November 19, 1997. The evidence presented on this issue at the hearing was as follows.
Mrs. Satterfield testified that the last time Bledsoe had seen Amber prior to the filing of the petition for adoption was on April 30, 1996 at Bledsoe's grandmother's house. She also testified that Bledsoe had not communicated with Amber by telephone or mail in the year preceding the filing of the petition. Bledsoe did not contradict this testimony. Bledsoe testified that, after his April 1996 visit with Amber, he had next seen her at the "Spring Fling" in Miamisburg in the spring of 1998. On that occasion, according to Bledsoe, Amber's aunt "grabbed Amber and took off in another direction" when she saw Bledsoe. Bledsoe does not contend that he actually spoke with Amber on this occasion, only that he saw her, but he encourages us to "find that this meeting constituted communication within the meaning of the statute."
We reject Bledsoe's argument that the trial court should have found that his consent was required based on his alleged meeting with Amber at the Spring Fling. This meeting occurred after the petition for adoption had been filed and thus was not within the one-year period upon which the trial court was required to focus in determining whether Bledsoe had failed to communicate with Amber. Moreover, we are of the view that seeing Amber across a parking lot or a field is simply not the same as communicating with her, however fortuitously.
In the alternative, Bledsoe argues that he had justifiable cause for his failure to communicate with Amber because Satterfield and a friend had attacked him in September 1996 and had threatened further violence against him. The parties presented conflicting evidence about this altercation at the hearing. The Satterfields admitted that, while driving with their acquaintance Chad Smith, they had seen Bledsoe and King driving in another car. Satterfield sped ahead of Bledsoe's car and blocked the road with his own car, forcing Bledsoe to stop. Smith, who knew some of the background between the Satterfields and Bledsoe, including alleged threats and harassment, jumped out of Satterfield's car and proceeded to fight with Bledsoe, injuring him. Satterfield did not participate in the fight. Satterfield acknowledged that he had wanted to hit Bledsoe that day because, in the previous year, Bledsoe had called Mrs. Satterfield names, had hit her, and had threatened to take Amber out of the state. Satterfield denied, however, that he had threatened to harm Bledsoe if he ever attempted to see Amber again. Bledsoe and King testified that Satterfield had told Bledsoe during the fight that the beating was for trying to get in touch with Mrs. Satterfield and that if he made any threats to Amber he would be sorry. According to Smith's statement to the police, Bledsoe and King had approached his side of the car, King had called him names, and Bledsoe had spit in his face, precipitating the physical altercation. Bledsoe acknowledged that he had not sought court-ordered visitation and had not enlisted the help of the police in seeing his daughter.
Based on this evidence, the trial court could have reasonably concluded that the Satterfields had shown, by clear and convincing evidence, that Bledsoe had not been justified in his failure to communicate with Amber. Satterfield himself never harmed Bledsoe and, while we do not condone Smith's attack on Bledsoe, the trial court could have reasonably concluded that this attack did not justify Bledsoe's complete abandonment of his efforts, if any, to see Amber. Bledsoe could have been reasonably expected to enlist the help of authorities in seeing his daughter if he had been motivated to do so. Because Bledsoe concedes that he had already gone five months without seeing Amber by the time of the fight, there was no detectable change in Bledsoe's efforts to see his daughter attributable to the fight. Moreover, in weighing the evidence, the trial court could have reasonably concluded that the testimony of the Satterfields was more credible than the testimony of Bledsoe and King.
Finally, Bledsoe argues that he had justifiable cause for his failure to communicate with Amber because the Satterfields did not provide him with their address. Bledsoe testified at the hearing, however, that he knew the house in which the Satterfields lived, just not the street address. These facts distinguish Bledsoe's situation from Holcomb, supra, the case upon which he relies, where the petitioner and the custodial parent engaged in a concerted and deliberate effort to interfere with communication by withholding their address and telephone number.
For the foregoing reasons, the trial court did not err in concluding that Bledsoe had failed, without justifiable cause, to communicate with Amber in the year preceding the filing of Satterfield's petition for adoption.
Bledsoe also contends that the trial court erred in concluding that he had not supported Amber in the year preceding the filing of the petition.
Any contribution toward child support, no matter how meager, satisfies the support and maintenance provisions of R.C.3107.07(A). Celestino v. Schneider (1992), 84 Ohio App.3d 192,196; In re Adoption of Salisbury (1982), 5 Ohio App.3d 65, 67. In challenging the trial court's determination, Bledsoe relies on Mrs. Satterfield's testimony that he spent $75 to $100 for diapers, formula, and medical costs in the three and one-half years of Amber's lifetime and on his own testimony that he bought several items of clothing for the child.
Although Mrs. Satterfield did testify that Bledsoe had spent $75 to $100 on Amber in her lifetime, she also testified that he had not contributed any money, gifts, diapers, or clothing in the year preceding the filing of the petition. Mrs. Satterfield testified that what support she had received from Bledsoe had come when Amber was very young, and she denied that Bledsoe had ever offered her money by check, cash, or money order. Bledsoe produced six or seven items of clothing that he had allegedly purchased for Amber "over the years," some of which she had "worn when she was real little" and others that he claimed he had never been able to give to her. Bledsoe did not testify with any specificity as to when any of the items had been purchased. Bledsoe also testified that Mrs. Satterfield had refused to accept checks from him drawn on King's account and that he had refused to pay her in cash because he wanted proof of payment. King testified to some specific attempts on Bledsoe's and her part to provide support for Amber, but the alleged efforts occurred more than one year prior to the filing of Satterfield's petition for adoption.
Again, the trial court could have reasonably credited the testimony of Mrs. Satterfield over that of Bledsoe and King and could have found, by clear and convincing evidence, that Bledsoe had not provided any support for Amber in the year preceding the filing of the petition.
Finally, Bledsoe claims that he had justifiable cause for his failure to support Amber in that Mrs. Satterfield had told him that she did not want his support. Although Mrs. Satterfield indicated that, after receiving little support from Bledsoe in Amber's first year, she "was just tired of the games, and * * * told him `No.," she also testified, as discussed above, that Bledsoe had not offered any further support. Bledsoe and King contradicted this testimony. Because it is apparent, however, that the trial court found the testimony on Mrs. Satterfield more credible than that of Bledsoe and King, we cannot conclude that the trial court erred in finding, by clear and convincing evidence, that Bledsoe had failed to support Amber without justifiable cause in the year preceding the filing of the petition for adoption.
The first and second assignments of error are overruled.
The judgment of the trial court will be affirmed.
GRADY, P.J. and YOUNG, J., concur.
Copies mailed to:
Tom O. Merritt
Branford D. Brown
Hon. George J. Gounaris