**IN RE ADOPTION OF HUDNELL.**

[Cite as *In re Adoption of Hudnell* (1996), 113 Ohio App.3d 296.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 95 CA 2159.

Decided Aug. 6, 1996.

*Joseph & Joseph* and *Jennifer J. Joseph,* for appellant Robert A. Davis.

*Michael M. Ater,* for appellees Charles and Florence Hudnell.

KLINE, Judge.

This appeal arises from a judgment of the Ross County Common Pleas Court, Probate Division. Petitioners-appellees Charles Hudnell and Florence Hudnell sought to adopt the son of Florence Hudnell, Robert Shane Davis. The trial court concluded that the consent of the biological father, appellant Robert A. Davis, was unnecessary because appellant had failed to communicate with or support his son for the year preceding the filing of the adoption petition.[1]

---

1. A trial court's finding pursuant to R.C. 3107.07 that the consent to an adoption of a party described in R.C. 3107.06 is not required is a final appealable order. *In re Adoption of Greer* (1994), 70 Ohio St.3d 293, 638 N.E.2d 999, paragraph one of the syllabus.

Appellant filed a motion for a new trial, which was subsequently denied. Appellant now appeals and asserts the following assignments of error:

"I. Whether the trial court erred in finding that the appellant had failed, without justifiable cause, to communicate with Robert Shane Davis as required by law or judicial decree for a period of at least one year immediately preceding the filing of the adoption petition.

"II. Whether the trial court erred in finding that appellant had failed, without justifiable cause, to provide for the maintenance and support of Robert Shane Davis as required by law or judicial decree for a period of at least one year immediately preceding the filing of the adoption petition.

"III. Whether the trial court erred in failing to allow the testimony of appellant as to specific instances of appellee's history of thwarting his ability to visit with his son."

Robert Shane Davis was born on September 23, 1986. Ms. Hudnell and appellant were not married but did reside together until six months after the birth of their son. Robert Shane has always been in the custody of Ms. Hudnell and has lived with Mr. Hudnell since October 28, 1989, when the Hudnells were married. Appellant was known to be the father of Robert Shane and apparently signed the birth certificate.[2] However, parentage was not determined pursuant to R.C. Chapter 3111 until May 22, 1995, when appellant acknowledged that he was the father in an administrative proceeding. Appellees petitioned for adoption on May 24, 1995. Neither party filed an objection to the administrative proceeding within thirty days and the administrative determination of parentage therefore became final on June 21, 1995. See R.C. 3111.22(D)(1). An administrative support order was entered against appellant on June 27, 1995. On August 22, 1995, the trial court determined that appellant's consent to the adoption was not needed. The trial court found that appellant had failed to communicate with his son for the year preceding the petition for adoption. However, the trial court noted that appellant had "accidentally" spoken with his son on Christmas Day 1994. The trial court also found that appellant had provided no support for his child in the year preceding the filing of adoption other than $20 he gave his son at Christmas, which his son subsequently returned.

Certain parties specified in R.C. 3107.06 must consent in writing to the adoption of a child. R.C. 3107.06 provides:

---

**2.** The trial court's judgment entry states that appellant signed the birth certificate. However, we are unable to confirm this because a copy of the birth certificate was not made part of the record by appellees as required pursuant to R.C. 3107.05(B).

"Unless consent is not required under section 3107.07 of the Revised Code, a petition to adopt a minor may be granted only if written consent to the adoption has been executed by all of the following:

" * * *

"(B) The father of the minor, if the minor was conceived or born while the father was married to the mother, if the minor is his child by adoption, or if the minor has been established to be his child by a court proceeding;

" * * *

"(F) Subject to division (B) of section 3107.07 of the Revised Code, the putative father, if he:

"(1) Is alleged to be the father of the minor in proceedings brought under sections 3111.01 to 3111.19 of the Revised Code at any time before the placement of the minor in the home of the petitioner;

"(2) Has acknowledged the child in a writing sworn to before a notary public at any time before the placement of the minor in the home of the petitioner;

"(3) Has signed the birth certificate of the child as an informant as provided in section 3705.09 of the Revised Code;

"(4) Has filed an objection to the adoption with the agency having custody of the minor or the department of human services at any time before the placement of the minor in the home of the petitioner, or with the probate court or the department of human services within thirty days of the filing of a petition to adopt the minor or its placement in the home of the petitioner, whichever occurs first."

The right to consent provided by R.C. 3107.06 may be negated by 3107.07 if the party has not undertaken certain actions in connection with the child. The protection of one's right to consent from negation by R.C. 3107.07 varies depending upon the section of 3107.06 through which one claims a right to consent. If appellant derives his right to consent from R.C. 3107.06(B), then R.C. 3107.07(A)[3] applies; if the right to consent derives from R.C. 3107.06(F), then 3107.07(B)[4] applies. This distinction is critical because the statutory right to

---

**3.** One determined to be a father through a parentage action may lose his right to consent to an adoption if he fails "without justifiable cause to communicate with the minor * * * as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner." R.C. 3107.07(A).

**4.** The putative father may lose his right to consent if it is shown that "he is not the father of the minor, or that he has willfully abandoned or failed to care for and support the minor, or abandoned the mother of the minor during her pregnancy and up to the time of her surrender

consent may be more easily negated through R.C. 3107.07(B) than through R.C. 3107.07(A).[5]

█ This case is unique because appellant has acknowledged that he was the father of Robert Shane through an administrative procedure pursuant to R.C. 3111.20 *et seq.* R.C. 3107.06(B) requires a father of the minor "established * * * by a court proceeding" to consent to an adoption. An administrative proceeding is generally not considered a court proceeding. Therefore, appellant's statutory right to consent would be derived from R.C. 3107.06(F)(3) for putative fathers. Appellant would enjoy the lesser protections of his right to consent to the adoption found in R.C. 3107.07(B) rather than the greater protections found in R.C. 3107.07(A) because he had been determined to be the father of Robert Shane in an administrative hearing rather than a court proceeding. However, we find this result nonsensical and therefore hold that an administrative determination of parentage pursuant to R.C. 3111.20 *et seq.* is a court proceeding for purposes of R.C. 3107.06(B).

A final administrative determination of parentage pursuant to R.C. 3111.20 to 3111.29 is equal in all aspects to a court proceeding of parentage. The parentage statute specifically provides that parentage between father and child may be established by "a probate court entering an acknowledgment upon its journal as provided in section 2105.18 of the Revised Code, and pursuant to sections 3111.01 to 3111.19 or 3111.20 to 3111.29 of the Revised Code." R.C. 3111.02(A). Furthermore, a court determining parentage is to give full faith and credit to parentage determinations "made pursuant to a voluntary acknowledgement of paternity, an administrative procedure, or a court proceeding." R.C. 3111.02(B). Finally, if the parties object to the administrative determination, they are given a time span within which to file with the juvenile court. If the parties do agree, it seems absurd to clog the courts with fathers seeking to further protect their right to consent to an adoption.

The administrative determination of parentage was added to the parentage

---

of the minor, or its placement in the home of the petitioner, whichever occurs first." R.C. 3107.07(B).

5. The putative father has less protection of his right to consent than the father established through a parentage action because the requirements of R.C. 3107.07(B) needed to negate the right to consent are more general and thus easier to meet than those in R.C. 3107.07(A). Furthermore, the putative father is required to file a written objection to an adoption to preserve his right to consent. R.C. 3107.07(B); *In re Adoption of Greer* (1994), 70 Ohio St.3d 293, 638 N.E.2d 999, paragraph three of the syllabus. One determined to be the father through a parentage action need not file a written objection to preserve his right to object. R.C. 3107.07(A).

statute effective July 15, 1992.[6]  In many instances, one is barred from bringing a court action to determine parentage until the administrative procedure has been exhausted.  R.C. 3111.22(A).  The administrative procedure provides that the mother and father may acknowledge paternity, which results in an administrative order that the alleged father is the father of the child.  R.C. 3111.22(C)(3).  The mother or father has thirty days within which to object to this order by filing an action under R.C. 3111.01 to 3111.19 in juvenile court, or the order becomes final.  R.C. 3111.22(D)(1).  In the case *sub judice,* appellant and Ms. Hudnell acknowledged that appellant was the father of Robert Shane in the administrative proceeding and no action challenging the administrative order was initiated in the juvenile court within thirty days.  Therefore, the administrative determination that appellant is the father of Robert Shane is final.

We note that R.C. 3107.06(B) and 3107.07(A) are applicable in the case *sub judice* even though the petition for adoption was filed on May 22, 1995, which was before the administrative determination of parentage was final on June 21, 1995.  The administrative determination of parentage had been made on May 22, 1995 and became a final order thirty days later on June 21, 1995.  The court determined that appellant need not consent to the adoption on August 22, 1995.  The Ohio Supreme Court has addressed an analogous timing of events in the determination of parentage by a court and held that "any reference to the statutory provisions governing the rights of the putative father of the minor is unnecessary." *In re Adoption of Sunderhaus* (1992), 63 Ohio St.3d 127, 130, 585 N.E.2d 418, 420, fn. 1.  We therefore look to the statutory provisions governing the rights of the parent of a minor to determine appellant's rights.

Appellant was required to consent to the adoption of Robert Shane pursuant to R.C. 3107.06(B).  The right may be negated by R.C. 3107.07(A), which provides:

"Consent to adoption is not required of * * * [a] parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."

We first consider appellant's second assignment of error.  Appellant asserts that the trial court erred when it found that appellant had failed to support Robert Shane for the year preceding the filing of the petition of adoption.

---

**6.** The parentage statute has once again been amended effective November 15, 1996.  R.C. 3107.06 was last amended effective March 16, 1989.

The party petitioning for adoption in the trial court has the burden of proving, by clear and convincing evidence, that the parent failed to support the child for the requisite one-year period. *In re Adoption of Masa* (1986), 23 Ohio St.3d 163, 23 OBR 330, 492 N.E.2d 140, paragraph one of the syllabus. The "clear and convincing evidence" standard is a higher degree of proof than the "preponderance of the evidence" standard generally utilized in civil cases but is less stringent than the "beyond a reasonable doubt" standard used in criminal cases. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60. An appellate court will not substitute its own judgment for that of a trial court applying a "clear and convincing evidence" standard where some competent and credible evidence supports the trial court's factual findings. *Id.; C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

■ The Ohio Supreme Court has held that "[t]he one-year period of nonsupport prescribed in R.C. 3107.07(A), which obviates the requirement to obtain parental consent to an adoption pursuant to R.C. 3107.06, commences on the date that parentage has been judicially established." *In re Adoption of Sunderhaus,* 63 Ohio St.3d 127, 585 N.E.2d 418, paragraph two of the syllabus. The court reached this strict interpretation after reading R.C. 3107.07(A) *in pari materia* with R.C. Chapter 3111 and finding that a putative father has no statutory or common-law duty to support his child. *Id.* at 130, 585 N.E.2d at 420. See, also, *id.* at 133, 585 N.E.2d at 422 (Holmes, J., concurring). Conversely, one recognized as a parent pursuant to R.C. Chapter 3111 does have a duty to support the child. See *Bercaw v. Bercaw* (1989), 45 Ohio St.3d 160, 161, 543 N.E.2d 1197, 1198.[7] The court in *Sunderhaus* cited concerns that the putative father's belief regarding parentage may prove to be unfounded. *Id.* at 131, 585 N.E.2d at 420. The putative father should therefore not be bound to support the child until parentage has been determined pursuant to R.C. 3111.02(A). See *id.*[8]

The trial court interpreted *Sunderhaus* as applying only when paternity was controverted. We disagree because *Sunderhaus* hinged on when parentage was established by R.C. Chapter 3111 rather than on whether parentage had been controverted before any proceedings under R.C. Chapter 3111 were undertaken.

---

7. Once parentage has been established pursuant to R.C. Chapter 3111, an action may be maintained against a father to recover back child support for the period before parentage was established. *Seegert v. Zietlow* (1994), 95 Ohio App.3d 451, 462, 642 N.E.2d 697, 704.

8. Although *Sunderhaus* referred to support duties beginning after a judicial determination of parentage pursuant to R.C. 3111.08(B) or 3111.12, we find that support duties also begin after a final administrative determination of parentage pursuant to R.C. 3111.20 to 3111.29. We note that the decision in *Sunderhaus* was rendered before R.C. Chapter 3111 was amended and therefore would not have included any reference to the administrative determination. Furthermore, the methods by which parentage may be established pursuant to the Revised Code include an administrative determination. R.C. 3111.02(A).

Appellees' petition for adoption was filed on May 24, 1995. Appellant's duty to support Robert Shane began on June 21, 1995, the date when the administrative order was final[9]; therefore, the trial court's finding that appellant had not supported Robert Shane for the year preceding the adoption was error because appellant had no duty to support his child during this time. See *Sunderhaus, supra.* Appellant may not be found to have obviated his right to consent to the adoption of Robert Shane for failure to support until June 21, 1996 at the earliest. Appellant's second assignment of error is sustained.

█ We now address appellant's first assignment of error. R.C. 3107.07(A) provides that appellant's consent to the adoption is not required if he failed to either support or communicate with his child for one year preceding the filing of the petition for adoption. The trial court's judgment may therefore still be affirmed if we uphold its finding regarding appellant's lack of communication. Appellant claims that the trial court erred when it found that he had not communicated with Robert Shane for the year preceding the adoption. Appellant claims that the meeting on Christmas Day 1994 that the trial court termed as "accidental" should be deemed communication.

The party petitioning for adoption has the burden of proving by clear and convincing evidence that the parent has failed to communicate with the child during the requisite one-year period and that there was no justifiable cause for the failure to communicate. *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 18 OBR 419, 481 N.E.2d 613, paragraph four of the syllabus. As stated previously, an appellate court will not substitute its own judgment for that of a trial court applying a "clear and convincing evidence" standard where some competent and credible evidence supports the trial court's factual findings. *State v. Schiebel,* 55 Ohio St.3d 71, 564 N.E.2d 54; *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

Given the rationale of *Sunderhaus,* 63 Ohio St.3d 127, 585 N.E.2d 418, it is unclear whether parentage must be established pursuant to R.C. Chapter 3111 before the one-year period of failing to communicate with one's child may begin to run. However, we save this question for a later day because its resolution is not necessary to dispose of the case *sub judice.*

The trial court interpreted "communication" as not including an accidental meeting. This was error. The Ohio Supreme Court has held that there must be a complete absence of communication for the one-year period. *Holcomb,* 18 Ohio

---

9. The duty to support begins when the determination of parentage is made rather than when a support order is entered. Consequently, appellant's duty to support Robert Shane began on June 21, 1995 when the administrative determination of parentage was final rather than on June 27, 1995 when the support order was entered.

St.3d 361, 18 OBR 419, 481 N.E.2d 613, at paragraph two of the syllabus. The court stated that "[t]he legislature purposely avoided the confusion which would necessarily arise from the subjective analysis and application of such terms as failure to communicate *meaningfully, substantially, significantly,* or *regularly.* * * * Instead, the legislature opted for certainty." (Emphasis *sic.*) *Id.* at 366, 18 OBR at 423–424, 481 N.E.2d at 619. The trial court's use of the term "accidental" to characterize the meeting is merely an attempt to subjectively analyze the communication.

Appellant communicated with Robert Shane on Christmas Day 1994. This was within the one-year period preceding the petition of adoption. All parties and the trial court agree that this communication occurred. Therefore, the trial court's finding that appellant failed to communicate in the year preceding the filing of the adoption petition was error. Appellant's second assignment of error is sustained.

Appellant's first and second assignments of error are sustained. The finding of the trial court is reversed and the cause is remanded. Appellant's consent to the adoption of Robert Shane is required pursuant to R.C. 3107.06(B) and this has not been negated by R.C. 3107.07(A). We need not consider appellant's third assignment of error due to our disposition of this matter. App.R. 12(A)(1)(c).

*Judgment reversed*
*and cause remanded.*

STEPHENSON, J., concurs.

HARSHA, J., concurs in judgment only.

HARSHA, Judge, concurring in judgment only.

I reluctantly concur in judgment only. In doing so, I note the following dicta in *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 367, 18 OBR 419, 424, 481 N.E.2d 613, 619:

"This conclusion in no way condones the actions of the uncaring, unworthy, or unscrupulous parent who, after a period of sustained absence, makes an infrequent communication for the sole purpose of frustrating or preventing adoption."

In its interpretation of R.C. 3107.07(A), the *Holcomb* court concluded that the legislature intended a bright-line, objective meaning of the term "communicate." While not expressly defining that term, the court held that a *complete* absence of communication is necessary to obviate consent. *Id.* at 366–367, 18 OBR at 423–424, 481 N.E.2d at 619. In doing so, the court recognized the illogical effect such a ruling has in the case of an "uncaring, unworthy, or unscrupulous parent." I believe that the Supreme Court overlooked the controlling rule of statutory

construction that the legislative edicts should not be construed in a manner that obtains unjust and unreasonable results. R.C. 1.47(C). The fact that a parent can require consent to an adoption by an accidental contact with a child during which the parent states that the child is a "little son of a bitch" is an unjust and unreasonable result.

Nonetheless, I am constrained by the Ohio Constitution to join my colleagues in following the syllabus of *Holcomb*.