### In re Adoption of McNUTT.

[Cite as *In re Adoption of McNutt* (1999), 134 Ohio App.3d 822.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 99CA2633.

Decided Sept. 27, 1999.

824

*Rick L. Faulkner,* for appellant Jason Michael Burgess.

*Franklin T. Gerlach,* for appellees Frank and Barbara McNutt.

KLINE, Presiding Judge.

Frank and Barbara McNutt filed a petition in the Scioto County Court of Common Pleas, Probate Division, to adopt their granddaughter, Justine Marissa Burgess, and a motion to change Justine's name to Marissa Deanne McNutt. Justine's father, Jason Michael Burgess, appeals the trial court's determination that his consent to the adoption is unnecessary. Burgess asserts that the trial court erred in finding that he failed to provide for the maintenance and support of Justine. We agree, because the trial court erroneously construed the terms "maintenance" and "support" to include only monetary payments, and because Burgess presented unrefuted evidence that he made substantial in-kind contributions toward Justine's maintenance and support. Accordingly, we reverse the judgment of the trial court.

I

The McNutts' daughter, Melissa D. McNutt, gave birth to Justine Marissa Burgess on August 9, 1994. At that time, Melissa lived at the McNutt residence. On May 9, 1996, Melissa died in an automobile accident. On July 16, 1996, the McNutts obtained an order granting custody of Justine to them and visitation rights to Burgess.

From the time of Justine's birth, Burgess acknowledged that he is Justine's father. On December 31, 1996, the Scioto County Court of Common Pleas,

Domestic Relations Division, entered a paternity determination confirming that fact. *McNutt v. Burgess* (Dec. 31, 1996), Scioto C.P.D.R. No. 96PD40, unreported.

On January 15, 1997, the Child Support Enforcement Agency ("CSEA") filed a motion in the paternity case seeking to establish a child support order. Burgess's mother received the certified notice of the hearing to determine support, scheduled for February 25, 1997, and she maintains that she informed Burgess of the hearing. Burgess claims that he never received the notice, and he failed to appear at the hearing. Burgess continued to exercise his visitation rights.

On July 17, 1997, the McNutts filed a petition to adopt Justine and change her name to Marissa Deanne McNutt. In the petition, the McNutts alleged that Burgess failed without justifiable cause to provide for the maintenance and support of Justine for a period of one year immediately proceeding the filing of the petition.

Burgess refused to consent to the adoption. On June 17, 1998, the trial court held a hearing to determine whether Burgess's consent was necessary for the adoption to proceed. The court focused its inquiry on whether Burgess failed without justifiable cause to provide for Justine's maintenance and support for over one year.

At the hearing, the McNutts testified that, prior to approximately July 10, 1996, Burgess gave them $30 for diapers and other necessities every other weekend when he picked up Justine for visitation. According to Mrs. McNutt, after July 10, 1996, Burgess continued to regularly pick up Justine for visitation, but no longer gave money for Justine's needs. Mrs. McNutt stated that she did not know why Burgess stopped giving money after that date.

The McNutts admitted that, during the relevant one year period, Justine often returned from Burgess's home with new clothing and shoes, and they did not know who purchased those items. Mrs. McNutt testified that she did not send money with Justine to provide for Justine's care while she was visiting Burgess. Mrs. McNutt speculated that Burgess's mother, not Burgess, fed and supported Justine during the weekend visits. Mr. McNutt stated that he believed that Burgess's mother and sister sometimes bought clothing for Justine.

Burgess's sister, Jodi, testified that she observed Burgess regularly provide Justine with food and shelter during weekend visits with Burgess. Additionally, Jodi testified that Burgess often gave Jodi money to take Justine shopping for clothing, shoes, and other items that Justine needed. Burgess's mother also testified that Burgess gave her money to purchase clothing, diapers, and shoes for Justine. Further, Burgess's mother testified that she had observed Burgess

purchase food and cook for Justine on many occasions. Burgess's mother maintained that Burgess spent his own money, not hers, on those items.

Burgess admitted that he failed to contact the CSEA to determine his child support payments, despite his knowledge that he needed to provide the CSEA with his income and tax information. Burgess testified that, because he gave the McNutts and the CESA his home and work telephone numbers, he assumed they would contact him for the information if they needed it. Burgess added that he is willing to pay child support and cooperate in the CSEA's effort to obtain a support order.

Burgess estimated that he spent $600 on Justine between July 16, 1996, and July 17, 1997. Burgess visited Justine every other weekend and provided her with food, clothing, shelter, and diapers during those visits. Burgess also testified that he purchased toys and entertainment for Justine, such as children's movies on videotape. He explained that he usually asks his mother or sister to select clothing and shoes for Justine, because they have more knowledge about fashion, and maintained that he pays for the clothing.

The trial court found that child support means money paid to the child's custodian, and that Burgess failed to present any evidence that he paid any money to the McNutts. Therefore, the trial court found that Burgess failed without justifiable cause to support Justine. The court held that Burgess's consent was not required for the McNutts' adoption of Justine to proceed.

Burgess appeals, asserting the following assignment of error:

"The probate court erred in finding that the father failed without justifiable cause to provide for the maintenance and support of his child as required by law and in holding that the petition for adoption may proceed without the consent of the father."

## II

Burgess contends that the trial court erred as a matter of law by holding that child support consists only of money paid to the custodian of the child. Burgess argues that a father's duty to provide for the maintenance and support of his child may be satisfied not only by monetary contributions to the custodian, but also by in-kind contributions that benefit the child. The McNutts contend that Burgess failed to make even in-kind contributions, and that, even if Burgess did provide some clothing and food for Justine, his contributions were de minimis. Therefore, the McNutts urge us to affirm the trial court's holding that Burgess's consent is not necessary for their adoption of Justine.

Parental consent generally is a jurisdictional prerequisite to adoption. *McGinty v. Jewish Children's Bur.* (1989), 46 Ohio St.3d 159, 161, 545 N.E.2d

1272, 1274. R.C. 3107.06 provides that a petition to adopt a minor child can be granted only if certain individuals, including the adjudicated natural father of the child,[1] execute a written consent. R.C. 3107.07 creates exceptions to the parental consent requirement. R.C. 3107.07 provides:

"Consent to adoption is not required of any of the following:

"(A) A parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."

The relationship between a parent and child is a constitutionally protected liberty interest. See *In re Adoption of Zschach* (1996), 75 Ohio St.3d 648, 653, 665 N.E.2d 1070, 1074–1075. Therefore, any exception to the parental consent requirement for adoption "must be strictly construed so as to protect the right of natural parents to raise and nurture their children." *In re Adoption of Schoeppner* (1976), 46 Ohio St.2d 21, 24, 75 O.O.2d 12, 13, 345 N.E.2d 608, 610. The relevant inquiry is not whether the parent provided support as would be expected, "but whether the parent's failure to support * * * is of such magnitude as to be the equivalent of abandonment." *Celestino v. Schneider* (1992), 84 Ohio App.3d 192, 196, 616 N.E.2d 581, 584.

The petitioner seeking to adopt the child has the burden of proving, by clear and convincing evidence, both (1) that the natural parent has failed either to support or communicate with the child for the requisite one-year period, and (2) that the failure was without justifiable cause. *In re Adoption of Bovett* (1987), 33 Ohio St.3d 102, 515 N.E.2d 919, paragraph one of the syllabus; *In re Adoption of Masa* (1986), 23 Ohio St.3d 163, 23 OBR 330, 492 N.E.2d 140, paragraph one of the syllabus. On appeal, we will not disturb a probate court's determination that consent is, or is not, necessary unless the court's determination is against the manifest weight of the evidence. *Bovett* at paragraph four of the syllabus.

---

1. We note the one-year period during which support is required commences on the date of the paternity adjudication. *In re Adoption of Sunderhaus* (1992), 63 Ohio St.3d 127, 585 N.E.2d 418, paragraph two of the syllabus. In this case, the paternity determination did not occur until December 31, 1996, only six months prior to the filing of the petition for adoption. Had Burgess raised this issue in the trial court, he would have been entitled to dismissal of the petition. However, Burgess conceded that he had a duty to support Justine during the year preceding the petition. Accordingly, under the doctrine of waiver, we restrict our analysis to whether Burgess provided maintenance and support, *State v. Pless* (1996), 74 Ohio St.3d 333, 658 N.E.2d 766, paragraphs one and two of the syllabus (jurisdictional defect waived if not raised); *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police* (1991), 59 Ohio St.3d 167, 172, 572 N.E.2d 87, 92–93 (constitutional right waived if not raised).

Accordingly, as long as the record contains some competent and credible evidence supporting the trial court's findings, we will affirm the judgment of the trial court. *In re Adoption of Hudnell* (1996) 113 Ohio App.3d 296, 302, 680 N.E.2d 1055, 1058–1059, citing *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

In *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 18 OBR 419, 481 N.E.2d 613, the Ohio Supreme Court construed the provision of R.C. 3107.07(A) concerning communication. The court held that, "[p]ursuant to the explicit language of R.C. 3107.07(A), failure by a parent to communicate with his or her child is sufficient to authorize adoption without that parent's consent only if there is a complete absence of communication for the statutorily defined one-year period." *Id.* at paragraph two of the syllabus. The court reasoned that, because the General Assembly refrained from modifying "communicate" with words such as "substantially" or "regularly," the General Assembly intended to adopt an objective test for analyzing a parent's failure to communicate. *Id.* at 366, 18 OBR at 423–424, 481 N.E.2d at 618, citing *In re Adoption of Hupp* (1982), 9 Ohio App.3d 128, 130, 9 OBR 192, 194–195, 458 N.E.2d 878, 881–882.

The same strict construction applies to the failure to provide maintenance and support. *Vecchi v. Thomas* (1990), 67 Ohio App.3d 688, 692, 588 N.E.2d 186, 189; *In re Adoption of Bryant* (Dec. 9, 1997), Adams App. No. 97CA635, unreported, 1997 WL 766460. Just as R.C. 3107.07 does not modify or define "communicate," it likewise does not modify or define "maintenance" or "support." Therefore, we look to the ordinary and accepted meanings of these words. *Id.*, citing R.C. 1.42 and *Smith v. Ray* (1948), 149 Ohio St. 394, 398, 37 O.O. 89, 91, 79 N.E.2d 116, 118. Black's Law Dictionary (6 Ed.1990) 953, defines the word "maintenance" as "[t]he furnishing by one person to another, for his or her support, of the means of living, or food, clothing, shelter, etc. * * *." "Support," by definition, includes "anything requisite to housing, feeding, clothing, health, proper recreation, vacation, traveling expense, or other proper cognate purposes * * *" *Id.* at 1439. Thus, the terms "maintenance" and "support" may include, but are not limited to, monetary payments. *Bryant, supra; In re Adoption of Dea* (Mar. 25, 1994), Lake App. No. 92–L–120, unreported, 1994 WL 102390; *In re Adoption of Mills* (Oct. 25, 1993), Warren App. No. CA93–04–036, unreported, 1993 WL 430473; *In re Matter of Beekman* (Sept. 10, 1991), Scioto App. No. 90CA1883, unreported, 1991 WL 179580.

Moreover, a "meager" amount of support is sufficient to avoid a finding that the parent's consent is not required. See *Bryant, supra;* see, also, *Celestino,* 84 Ohio App.3d at 197, 616 N.E.2d at 584–585 (father's payment of $36 to CSEA precluded a finding of failure to provide maintenance and support); *Vecchi,* 67 Ohio App.3d at 691, 588 N.E.2d at 188–189 (father's payment of $130 to

830

CSEA precluded a finding of failure to provide maintenance and support); *In re Adoption of Salisbury* (1982), 5 Ohio App.3d 65, 67, 5 OBR 161, 163–164, 449 N.E.2d 519, 522–523; *Dea, supra; Mills, supra.* At least two appellate districts have held that a natural parent who provides for the child's needs during visitation has given sufficient support to avoid the operation of R.C. 3107.07(A). *In re Adoption of Huffman* (Aug. 29, 1986), Mercer App. No. 10–85–4, unreported, 1986 WL 9662; *In re Adoption of Pinkava* (Jan. 13, 1989), Lucas App. L–88–034, unreported, 1989 WL 1614; contra *Dea, supra.*

■■■■■ Conversely, contributions which are of no value to the child generally do not qualify as maintenance and support. For example, where the natural father places the child on his health insurance plan, but does not inform the custodial parents of the coverage, the contribution does not constitute maintenance and support. *In re Adoption of Knight* (1994), 97 Ohio App.3d 670, 672, 647 N.E.2d 251, 253; *In re Adoption of Strawser* (1987), 36 Ohio App.3d 232, 522 N.E.2d 1105. Likewise, when the child possesses sufficient clothes and toys, the natural father's purchase of clothing and toys may not be sufficient to preserve the father's right to prevent an adoption. *Id.* at 234, 522 N.E.2d at 1107. Nor will gifts to the child qualify as support. *Id.; In re Adoption of McCarthy* (Jan. 17, 1992), Lucas App. No. L–91–199, unreported, 1992 WL 23175 (where father gave $14 directly to his son, money constituted gift, not maintenance and support). Finally, several appellate courts have held that a natural parent cannot thwart the operation of R.C. 3107.07(A) merely by making one or two token support payments. *In re Adoption of Wagner* (1997), 117 Ohio App.3d 448, 454, 690 N.E.2d 959, 963 (father's payment of less than three percent of his income was sufficient to establish failure to provide maintenance and support); *Knight,* 97 Ohio App.3d at 672, 647 N.E.2d at 253 (single payment of $20 was sufficient to establish failure to provide maintenance and support).

■■■■■ In this case, Burgess was not subject to a court-imposed support order. Burgess concedes that he did not pay any support through the CSEA during the one-year period preceding the McNutts' filing of the adoption petition. The trial court held that Burgess's conceded failure to "pay" support was equivalent to a failure to "maintain and support" Justine "as required by law." In so concluding, the trial court held that the clothing, shoes, and diapers that Burgess purchased for Justine do not qualify as support as a matter of law.

We disagree. As we held in *Bryant, supra,* maintenance and support may consist of contributions other than monetary payments to the child's custodian or the CSEA. While we do not condone Burgess's irresponsible behavior in avoiding support payments, R.C. 3107.07(A) must be construed strictly in favor of the nonconsenting parent, and therefore Burgess's nonmonetary contributions are relevant. Accordingly, we find that the trial court erred as a matter of law in

restricting its interpretation of maintenance and support to monetary payments made to the McNutts or the CSEA.

■   Additionally, we find that the record does not contain any competent, credible evidence supporting the McNutts' contention that Burgess completely failed to provide for Justine's maintenance and support.  The McNutts testified that Justine frequently came home from her visits with Burgess with new clothes and shoes.  Burgess, his mother, and his sister each testified that Burgess purchased items that Justine needed, including diapers and food.  Thus, although Burgess gave his contributions directly to Justine, they provided Justine with necessities, and hence were more than mere gifts.  Moreover, Burgess did not make contributions to Justine's maintenance and support only in an effort to thwart the McNutts' adoption petition.  Rather, Burgess consistently provided for Justine every other weekend during the relevant one-year period.  Mrs. McNutt's speculation that Burgess's mother supported Justine during visitation does not constitute competent, credible evidence that Burgess failed to provide her maintenance and support.  Thus, Burgess presented undisputed evidence that, during the one-year period in question, he provided Justine with necessities in the course of exercising his visitation privileges with her.  The McNutts failed to meet their burden of proving by the manifest weight of the evidence that Burgess failed entirely to provide for the maintenance and support of his daughter.

In conclusion, we find that, for purposes of R.C. 3107.07(A), a parent may fulfill his duty to support his child via non monetary contributions.  We also find that the record does not contain any competent, credible evidence supporting a finding that Burgess failed to provide for Justine's maintenance and support during the year preceding the petition.  Accordingly, we sustain Burgess's sole assignment of error, and reverse the judgment of the trial court.

*Judgment Reversed.*

PETER B. ABELE and EVANS, JJ., concur.