DECISION AND JUDGMENT ENTRY
Appellant, Scott Terry, appeals from a judgment of the Scioto County Court of Common Pleas, Probate Division, that permitted the adoption of Brianna Marie Talbott (Brianna), f.k.a. Brianna Marie Terry, without appellant's consent. Appellant challenges the trial court's determination that for one year immediately preceding the filing of the petition for adoption he both failed to communicate with Brianna and to provide support and maintenance for her without justifiable cause.[1] He assigns the following error for our review:
 "THE TRIAL COURT ERRED WHEN IT FOUND THAT THE CONSENT OF THE NATURAL FATHER, SCOTT TERRY, WAS NOT REQUIRED WITH RESPECT TO THE ADOPTION FILED BY MICHAEL TALBOTT OF BRIANNA MARIE TERRY."
Appellant and Billie Jo Talbott, f.k.a. Billie Jo McAllister (Ms. Talbott), lived together, off and on, from the summer of 1995 through November 1997. Brianna was born in March of 1996 as a result of this relationship. Ms. McAllister married Michael Talbott in November of 1998. Mr. Talbott subsequently filed his petition to adopt Brianna in October of 2000. The appellant quickly filed his objection to the adoption.
Following the end of the relationship between appellant and Ms. Talbott, appellant continued to communicate with and support Brianna until June 1999 (Father's Day), at which time he gave Ms. Talbott $1500. Appellant acknowledged at trial that he has not supported Brianna since June 1999. Appellant also acknowledged that he has not communicated with Brianna since March 16, 1999, her third birthday. Appellant contended that due to the Talbott's many changes of residence he was unable to keep track of where Brianna was living. Appellant stated that he had no method of contacting Brianna because Ms. Talbott failed to update him with a current address or phone number. Appellant argued that his failure to support and communicate with Brianna is supported by justifiable cause due to this interference. However, the trial court found that there was clear and convincing evidence that appellant, without justifiable cause, failed to communicate with and support Brianna for the one year prior to the filing of the petition for adoption.
In his lone assignment of error, the appellant contends that the trial court's determination that his consent is not required for Brianna's adoption by Michael Talbott is against the manifest weight of the evidence. We find this argument to be meritless, therefore, we affirm the trial court's determination.
Initially, we acknowledge "that the right of a natural parent to the care and custody of his children is one of the most precious and fundamental in law." In re Adoption of Masa (1986), 23 Ohio St.3d 163,165, 492 N.E.2d 140, 141-142. Accordingly, parental consent is generally a prerequisite to adoption. McGinty v. Jewish Children's Bur. (1989),46 Ohio St. 159, 161. R.C. 3107.06 provides that a petition to adopt a minor child can only be granted if certain individuals, including an adjudicated natural father, execute a written consent.[2]
R.C. 3107.07(A) creates an exception to the parental consent requirement.[3] However, any exception not requiring parental consent before an adoption must be strictly construed in order to protect the rights of the natural parent. See Masa, supra, citing In re Schoeppner
(1976), 46 Ohio St.2d 21, 24, 75 O.O.2d 12, 14, 345 N.E.2d 608, 610. Thus, in order to fall under the protection of this exception the petitioner must prove, by clear and convincing evidence, that within the year preceding the filing of the petition for adoption, the natural parent, without justifiable cause, has failed to either: (1) communicate with the child or (2) provide for the support of the child. See R.C.3107.07(A); see also In re Adoption of Bovett (1987), 33 Ohio St.3d 102,515 N.E.2d 919, paragraph one of the syllabus. Clear and convincing evidence has been defined as evidence that will produce a firm belief or conviction in the mind of the trier of fact as to the facts to be established. Cross v. Ledford (1954), 161 Ohio St. 469, 53 O.O. 361,120 N.E.2d 118, paragraph three of the syllabus. Once the petitioner shows the natural parent's failure by clear and convincing evidence, the natural parent must, in order to retain his right to refuse to consent to the adoption, show some facially justifiable cause for the failure to communicate with or support the child. Bovett, supra, paragraph two of the syllabus.
The trial court then has the duty to determine whether the natural parent's failure to communicate with or support the child "for that period as a whole (and not just a portion thereof) was without justifiable cause." Bovett, supra, paragraph three of the syllabus. The trial court's determination regarding the natural parent's justifiable cause for the failure to communicate with or support the child is a determination solely for the trial court and will not be disturbed on appeal, absent a showing that the determination is against the manifest weight of the evidence. Bovett, supra, paragraph four of the syllabus. With this in mind, the determination of the trial court will not be reversed as long as it is based on some competent, credible evidence. See In re Adoptionof McNutt (1999), 134 Ohio App.3d 822, 829, 732 N.E.2d 470, 474; In reAdoption of Kuhlmann (1994), 99 Ohio App.3d 44, 49, 649 N.E.2d 1279. This highly deferential standard of review applies even though the burden of proof is clear and convincing. See State v. Schiebel (1990),55 Ohio St.3d 71, 74. Lastly, as is generally the case, we must keep in mind that the trial court is in the best position to observe the demeanor of the parties, to assess their credibility, and to determine the accuracy of their testimony. See In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 367, 481 N.E.2d 613, 620.
In order to proceed without consent, a petitioner needs to establish that either: (1) the natural parent failed to communicate with or (2) that the natural parent failed to give support to the child. See R.C.3107.07(A); Bovett, supra, at 104. Here, the trial court determined that the appellee has proven by clear and convincing evidence that the appellant failed to both communicate with his child and give support to his child without justifiable cause for the statutory period. There is no dispute regarding this failure to communicate with Brianna or provide for her support. Appellant has acknowledged that he knew Brianna was his daughter and that after June 1999 he did not provide for her support. Appellant also acknowledged that he last communicated with Brianna on her third birthday, March 1999. Therefore, the only issue in this appeal is whether the trial court's determination that appellant did not establish justifiable cause for his failures is against the manifest weight of the evidence.
The appellant argues that his failures to communicate with and support Brianna are due to the interference by Ms. Talbott. Specifically, the appellant contends that because the Talbott's have lived in seven different places in four years he was unable to locate Brianna to talk to her or send Ms. Talbott money for Brianna's support. In order for interference to be a justifiable cause, it must be significant. See In reAdoption of Holcomb, supra, paragraph three of the syllabus. In Holcomb, the court upheld a finding of significant interference because the moving spouse had an unlisted telephone number, refused to give the ex-spouse the telephone number or address, and refused to give anyone who may have had contact with the ex-spouse the telephone number or address. See Id. at 369, 481 N.E.2d at 621. In addition, Holcomb indicates that the degree of effort necessary to obtain an address is a factor the court should consider in deciding whether the lack of contact is justified. SeeHolcomb, at 369.
There is evidence in the record from which the trial court could have concluded that the interference, if any, in this case was not significant and that the appellant did not have to do any substantial investigation in order to locate Brianna. Ms. Talbott testified that all seven changes of residence were made in order for Mr. Talbott to obtain promotions. Ms. Talbott also testified that her telephone number and address were never unlisted and therefore, were always available through the telephone book or 411 (information). Ms. Talbott also testified that she personally called the appellant with their new telephone number when they arrived in Kansas. The appellant acknowledged that while the Talbott's were living in Kansas he called and spoke to Brianna on March 16, 1999, her third birthday. Thus there is some evidence that the appellant had a telephone number in order to communicate with Brianna while she was living in Kansas. Furthermore, appellant's own mother stayed in Kansas for a week with the Talbott's to visit Brianna. Therefore, it would be logical for the trial court to conclude that appellant could have easily found the exact address for the Talbott's in order to visit, call, write or send money for support. Appellant also acknowledged that Ms. Talbott's parents have always lived at the same address; he could have left money for Brianna's support with Ms. Talbott's parents, which is precisely what the appellant did when he last gave Ms. Talbott money for Brianna's support around Father's Day 1999.
The appellant further alleged that, when asked, Ms. Talbott's relatives refused to tell him where the Talbott's were living. However, the appellant later stated that he only knew the Talbott's were back in the tri-state area when Ms. Talbott's relatives told him. The trial court could reasonably consider these assertions to be contradictory. In addition, Ms. Talbott testified that at no time did she instruct her relatives to refuse to tell the appellant her whereabouts. The appellant stated that he placed several phone calls to the Talbott's Kansas residence in order to talk with Brianna but no one ever answered. The only telephone call that was answered by the Talbott's was on Brianna's third birthday, which was discussed earlier. The appellant contends that this shows that he has tried to communicate with Brianna but could not because Ms. Talbott was refusing to answer the telephone when she realized it was the appellant's name on the Caller ID. In contrast, Ms. Talbott testified that the telephone call on Brianna's third birthday was the only one that was ever received or registered (on Caller ID) from the appellant. Therefore, there is competent, credible evidence to suggest that the Talbott's did not significantly interfere with the appellant's communication and that the appellant could have communicated with and/or supported Brianna with very little investigation.
Furthermore, the trial court could have concluded that Ms. Talbott attempted to facilitate contact between Brianna and the appellant. Ms. Talbott and her mother, Ms. Bays, both testified that in December 1998 Ms. Talbott asked her mother to call the appellant and let him know that Brianna was visiting Ms. Bays and that the appellant was welcome to visit. Although this occurrence is not within the statutory time period, it is evidence that rebuts the appellant's charge that Ms. Talbott interfered with his communication with Brianna. The testimony also revealed that Ms. Talbott had pictures of Brianna that she wanted Ms. Bays to give to the appellant. Ms. Bays testified that she called the appellant and invited him to see Sesame Street Live with Brianna and to let him know that Brianna was in town. According to her, the appellant agreed to join them but he never showed up; in fact, the appellant did not come to visit Brianna at Ms. Bays' home at all. However, Brianna did spend some time during this week with the appellant's father and the appellant did see Brianna at that time. The appellant contends that Ms. Talbott did not want him to see Brianna during this visit and that in order to see Brianna he had to "sneak" to his father's home. However, there is no evidence to corroborate the appellant's contention.
The appellant acknowledged at trial that Ms. Talbott never refused to let him visit Brianna but rather, the appellant did not want to deal with them (the Talbott's) because appellant and Ms. Talbott would argue. In fact, when the Talbott's lived in Elkins, West Virginia the appellant stated that Ms. Talbott never refused to allow him to visit Brianna in Elkins, but rather, the appellant simply chose not to visit Brianna because of the long drive involved.
The record supports the trial court's determination that the appellant's failure to communicate with and support Brianna was not justified; therefore, it is not against the manifest weight of the evidence. While there is some contradictory testimony between the appellant and Ms. Talbott, there is, nonetheless, some credible, competent evidence to support the trial court's decision. We reiterate that the trier of fact, the trial court in this instance, is in the best position to analyze the witnesses in order to determine their credibility. The trial court's determination that Ms. Talbott's testimony was more credible and carried more weight is within its discretion as the trier of fact. Therefore, the appellant's lone assignment of error is overruled.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court, Probate Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. Evans, J.: Concur in Judgment and Opinion.
 __________________________ William H. Harsha, Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
[1] In lieu of repeating "support and maintenance," only support will be used to refer to both support and maintenance.
[2] On March 17, 1996, appellant and Ms. Talbott (at that time Ms. McAllister) signed a Declaration of Paternity Affidavit in West Virginia, in which both acknowledged parentage. On September 19, 2000, appellant filed a Complaint to Establish Parental Rights andResponsibilities. On February 6, 2001, appellant and Ms. Talbott signed aMemorandum of Agreement, which was filed in the Scioto County Court of Common Pleas, Domestic Relations Division. This Memorandum set forth the agreement between the appellant and Ms. Talbott that appellant was Brianna's father, settling the appellant's Complaint. At trial, the appellant originally challenged the date that parentage had been judicially established as being February 6, 2001 (the signing of theMemorandum of Agreement) rather than March 17, 1996 (the signing of theDeclaration of Paternity Affidavit). However, the trial court found that parentage was established upon the signing of the Declaration of PaternityAffidavit. Appellant has not raised this decision of the trial court as an assignment of error, therefore, it is waived. See In the Matter ofMcNutt (1999), 134 Ohio App.3d 822, 828, 732 N.E.2d 470, 473, n. 1. In addition, appellant would have been unsuccessful at any rate because he acknowledged at trial that he knew he had a duty to support Brianna in the year prior to the filing of the adoption petition. See McNutt,supra.
[3] R.C. 3107.07(A) reads:
 Consent to an adoption is not required of any of the following: (A) A parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.