**In re ADOPTION OF JAMES et al.**

2003-Ohio-5953.]

Court of Common Pleas of Ohio,
Probate Division, Clark County.

Nos. 20035022 and 20035013.

Decided Oct. 3, 2003.

James E. Swaim, for petitioners.

James D. Marshall, for Birth Mother.

RICHARD P. CAREY, Judge.

{¶ 1} This matter came before the court on September 23, 2003, at the instance of Tina and James Smith, who have filed petitions for the adoption of Cole James and Skye Blue. At issue herein is whether the consent of the natural mother of the two children is a necessary prerequisite to this court's approval of these adoption petitions.

{¶ 2} Generally, and pursuant to R.C. 3107.06, a petition to adopt a minor may be granted only if written consent to the adoption has been executed by the natural mother and father of the minor. However, and pursuant to R.C. 3107.07, consent to adoption is not required of a parent of a minor when that parent has "failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner." The burden of proving this failure by clear and convincing evidence rests with the petitioners.

{¶ 3} To this end, the court makes the following findings of fact, to wit, Cole James and Skye Blue share the same mother, Sunshine Jones, but have different fathers.[1] The petitioners herein are the maternal aunt and uncle of both children—Tina Smith being the sister of Sunshine Jones. In the spring of 2000, Ms. Jones was living with Cole and Skye in Texas and was supporting them with the proceeds of her work as a club dancer. In August 2000, as a result of a poor relationship between Cole and Ms. Jones's live-in boyfriend at that time, John Jones, Ms. Jones sent Cole, then age five, to live with Tina and Jim in New Carlisle, Ohio. In May 2001, as a result of an incident wherein John Jones beat Skye about the face and head with a water bottle, Ms. Jones sent Skye Blue, then age two, to live with the Smiths. On June 20, 2001, the Smiths received letters of guardianship over Cole and Skye. Tina Smith requested that Ms. Jones pay $200 per week toward the support and maintenance of the children. Ms. Jones failed to tender any formal payments despite being gainfully employed or, when not employed, physically able to seek employment. The relationship between the Smiths and Ms. Jones deteriorated thereafter to the point where there was no communication between these parties.

---

1. The natural father of Skye Blue, Jason, voluntarily executed a consent to the adoption of Skye Blue on February 21, 2003. The natural father of Cole James, William, was served with notice of the petition for adoption of Cole James but failed to appear at the hearing. The last names of the parties have been changed to protect confidentiality.

{¶ 4} The Smiths filed a petition for the adoption of Skye Blue on March 31, 2003, and filed a petition for the adoption of Cole James on May 14, 2003. Ms. Jones withheld her consent to the adoptions. Accordingly, the petitioners have requested that this court order that her consent is not necessary in that she failed to communicate with or to provide the maintenance and support for her children without justifiable cause during the applicable one-year period of time—essentially a two-pronged review.

{¶ 5} The court first considers whether there was any communication between Ms. Jones and her children during this one-year period. The Smiths were aware of no such communication between Ms. Jones and the children. This notwithstanding, the court finds that Ms. Jones did visit with Cole for several hours in July 2002 and spoke with him by telephone on a few other occasions while Cole was visiting his maternal grandmother. Ms. Jones also spent several hours with Skye Blue in August 2002 while Skye was visiting her maternal grandmother. There was no other contact between Sunshine Jones and the children during this one-year period of time.

{¶ 6} As to the issue of support and maintenance, the court finds that Ms. Jones gave Cole a computer game that she had purchased for $158 for Cole's birthday in July 2002. She also spent approximately $700 for gifts during the Christmas holiday in December 2002. Of this, approximately $444 was spent on clothing—and the balance for toys. These presents were given to the maternal grandmother, who then presented them to the children. Ms. Jones tendered no other financial assistance.

{¶ 7} These findings do not present a picture consistent with a mother passionate about maintaining her parental bond with her children. Ms. Jones's suitability as a mother, however, is not the issue before this court. What is at issue at this juncture of the adoption proceedings is solely whether Ms. Jones, during the applicable one-year period, failed without justifiable cause to communicate with the children or to provide for the maintenance and support of the children as required by law.

{¶ 8} This issue must be resolved, quite appropriately, without the court's passing judgment on the parenting skills of the mother in this case. Her relationship with her children, after all, is a constitutionally protected interest. *In re Adoption of Zschach* (1996), 75 Ohio St.3d 648, 665 N.E.2d 1070. This court must protect her right as the natural parent to raise and nurture her children. Accordingly, and as it applies to the matter currently before this court, any exception to the requirement of parental consent as a precondition for an adoption must be strictly construed so as to protect her parental rights. *In re Adoption of Schoeppner* (1976), 46 Ohio St.2d 21, 75 O.O.2d 12, 345 N.E.2d 608.

{¶ 9} Indeed, the Ohio Supreme Court strictly construed the statutory language concerning the nature of the communication necessary to ensure the parents' right to withhold consent to an adoption. As to this first prong of the R.C. 3107.07 review, the Supreme Court stated that failing to communicate means a "complete absence" of communication during the applicable one-year period. *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 18 OBR 419, 481 N.E.2d 613. The court directed that trial courts should not read into the statutory language such qualifiers as "meaningfully," "substantially," "significantly," or "regularly" as it concerns the question of communication. *Holcomb*, supra, at 366, 18 OBR 419, 481 N.E.2d 613. The slightest communication is all that is necessary.

{¶ 10} In the case at bar, the evidence is clear and uncontroverted that Ms. Jones spent several hours visiting with Cole in July 2002 and with Skye in August 2002. Applying the *Holcomb* standard to this case, it is clear that this court must find that there was "communication," albeit slight, between Ms. Jones and her children. Accordingly, Ms. Jones did not forfeit her right to withhold consent to these adoptions by failing to communicate with her children.

{¶ 11} The second prong of this examination is somewhat more problematic. The Ohio Supreme Court has not yet had an occasion to consider the amount of parental maintenance and support necessary to avoid the forfeiture of the parent's right to withhold consent. While there is some conflict among the appellate districts, the majority of the courts of appeals, including that for this Second District, has ruled that *Holcomb*'s "strict construction" analysis should also apply to the issue of maintenance and support. Under this interpretation, any amount of support, no matter how "meager," would be sufficient to overcome the petitioners' burden to prove that the parent had failed to provide support and maintenance for the child. *In re Adoption of McNutt* (1999), 134 Ohio App.3d 822, 732 N.E.2d 470; *Celestino v. Schneider* (1992), 84 Ohio App.3d 192, 616 N.E.2d 581. This interpretation would demand a "complete absence" of support and maintenance before a parent could be deemed to have forfeited his or her right to withhold consent. *Vecchi v. Thomas* (1990), 67 Ohio App.3d 688, 588 N.E.2d 186.

{¶ 12} It is not entirely clear, however, that this issue is fully settled. In his concurring opinion in the Ohio Supreme Court case of *In re Adoption of Bovett* (1987), 33 Ohio St.3d 102, 515 N.E.2d 919, Justice Douglas opined that the General Assembly had not intended that one payment of support would be enough to frustrate the operation of the statute as it relates to maintenance and support. Rather, he contended, it should be left to the probate judge to view the "entire spectrum of events and the rights, duties and responsibilities of all the parties appearing in the case." *Bovett*, supra, 33 Ohio St.3d at 107, 515 N.E.2d

919. Justice Douglas concluded by arguing that the probate court should not be bound to negate the effect of the statute simply because the natural parent had made a payment or two during the applicable one-year period.

{¶ 13} This sentiment appears to have been echoed by some of the courts of appeals. The court in *In re Strawser* (1987), 36 Ohio App.3d 232, 522 N.E.2d 1105, ruled that $133 in clothing and toys would not be considered "support" when those gifts were not requested and, indeed, provided "no real value of support." That court concluded that gifts to the child during the Christmas holiday would not provide for the care and support of the child. The Court of Appeals for Scioto County ruled that "gifts" to a child do not qualify as "support." See *McNutt*, supra. And the Second District Court of Appeals has suggested in the dicta of *Vecchi*, supra, that meager payments made solely for the purpose of thwarting an adoption might not be considered as "support." The *Vecchi* court also left open the possibility that gifts that were not significant and not of any substantial use to the child might not be considered "support." See, also, *In re Adoption of Wagner* (1997), 117 Ohio App.3d 448, 690 N.E.2d 959; *In re Adoption of Knight* (1994), 97 Ohio App.3d 670, 647 N.E.2d 251.[2]

{¶ 14} As previously noted, this court found that Ms. Jones was either gainfully employed or fully and gainfully employable during the applicable one-year period. The petitioners had requested that she afford them $200 per week toward the support and maintenance of her children. Though she was in a position to pay toward their support and maintenance, Ms. Jones failed to make any monetary payments to the petitioners for the benefit of her children. The only items given to the children by Ms. Jones were a computer game given to Cole for his birthday, and toys and clothing given to the children as Christmas holiday gifts. The clothing given to the children, worth $444.05, was of no real value or

---

2. This court has observed that in the decisions of those courts calling for strict construction as to the second prong, that the emphasis appears to be on the words "support" and "maintenance." Those courts reason that just as there are no words qualifying or defining "communication" in the first prong, there are likewise no such words defining "support" and "maintenance" in the second prong. It strikes this court, in retrospect, that perhaps more attention should be directed toward the statutory language "to provide." The common usage of "provide," as presented by the Webster Dictionary, is to "make preparation for," to "make provision for," or to "supply what is needed for," in this case, the support and maintenance of a child. Perhaps that is what the General Assembly had contemplated. Had it been inclined to do so, the General Assembly easily could have chosen to use the words "contribute towards" had it intended to accept de minimis payments as sufficient to satisfy the parental obligation for the support and maintenance of children. As one pundit quipped: "If a friend promises to provide my meals during a week long vacation, I would expect more than a glass of orange juice." Perhaps the probate courts should be given more discretion to judge the nature and sufficiency of what parents are "providing" for their children when it comes to the issue of consent.

significance to the petitioners, who were already providing everything for the children, including their toys and clothing.

{¶ 15} After careful consideration, this court finds that these holiday gifts of Ms. Jones for the benefit of her children do not constitute "support and maintenance" for purposes of R.C. 3107.07. Therefore, the court finds that Sunshine Jones failed to provide for the maintenance and support of her children during the applicable one-year period. The court further finds that this failure to provide the support and maintenance for her children was without justifiable cause. Accordingly, this court finds that the consent of Sunshine Jones to the adoption of Skye Blue and Cole James is not a necessary precondition to their adoptions pursuant to R.C. 3107.07(A). This matter shall proceed to the best-interest hearing currently scheduled for October 23, 2003, at 10:30 a.m.

{¶ 16} IT IS SO ORDERED.

Judgment accordingly.